**Bryan R. SCHUETZ et al.**

v.

**STATE FARM FIRE & CASUALTY COMPANY.**

2007-Ohio-7267.]

Court of Common Pleas of Ohio,
General Division, Franklin County.

No. 05 CVH–08–9371.

Decided March 29, 2007.

Kevin M. Maloney, for plaintiff.

Mark H. Gams, for defendant.

REECE, Judge.

{¶ 1} This matter is before the court upon defendant State Farm Fire and Casualty Company's April 3, 2006 motion for judgment on the pleadings; plaintiff Bryan R. Schuetz's April 17, 2006 memorandum contra defendant's motion for judgment on the pleadings and plaintiff's cross-motion for judgment on the pleadings; defendant State Farm Fire and Casualty Company's May 4, 2006 memorandum contra plaintiff's motion for judgment on the pleadings and reply memorandum to plaintiff's memorandum contra defendant's motion for judgment on the pleadings; and plaintiff Bryan R. Schuetz's May 10, 2006 reply memorandum to defendant's memorandum contra plaintiff's motion for judgment on the pleadings. The parties' motions have been fully briefed and are deemed submitted to the court pursuant to Loc.R. 21.01.

{¶ 2} For the reasons that follow, the Court hereby grants in part and denies in part Defendant State Farm Fire and Casualty Company's April 3, 2006 motion for judgment on the pleadings and grants in part and denies in part plaintiff Bryan R. Schuetz's April 17, 2006 cross-motion for judgment on the pleadings.

## BACKGROUND

### The Charvat Action

{¶ 3} Bryan R. Schuetz is a licensed chiropractor, and Bryan Schuetz, D.C., Inc. is an Ohio corporation wholly owned by Bryan R. Schuetz.

{¶ 4} On January 4, 2005, Philip J. Charvat filed a first amended complaint against Bryan R. Schuetz and Bryan Schuetz, D.C., Inc. ("the Schuetz defendants," with respect to the *Charvat* action) in *Charvat v. Bryan Schuetz, D.C., Inc.*, Franklin C.P. No. 04 CVH–09–9669 ("the *Charvat* action"). Charvat's first amended complaint alleges that the Schuetz defendants intentionally and knowingly made prerecorded telephone calls to him on June 2, 2004, to advertise their goods and services, thereby violating the Telephone Consumer Protection Act of 1991, 47 U.S.C. 227 et seq., and the Ohio Consumer Sales Practices Act, R.C. 1345.02(A).

{¶ 5} Bryan R. Schuetz had previously obtained a general liability insurance policy from State Farm Fire and Casualty Company. The policy provided

coverage to the named insured, Bryan R. Schuetz, d.b.a. Capital City Chiropractic, for the coverage period of March 6, 2004, through March 6, 2005.

{¶ 6} On or about April 22, 2005, the Schuetz defendants presented a claim to State Farm, seeking coverage for the *Charvat* claims under the terms of the insurance policy ("the State Farm policy"), as well as a request that State Farm provide a defense with respect to the same. On or about May 18, 2005, State Farm denied the Schuetz defendants' request for defense and indemnification, contending that the allegations contained in the *Charvat* complaint were not the result of an accident or occurrence covered by the policy, and the damages sought were not for bodily injury, personal injury, advertising injury, or property damage, as defined in the State Farm policy.

{¶ 7} The Schuetz defendants paid for their own defense and eventually settled the *Charvat* claims.

*This Action*

{¶ 8} On August 26, 2005, due to State Farm's denial of coverage, plaintiffs Bryan R. Schuetz and Bryan Schuetz, D.C., Inc. initiated this action against defendant State Farm Fire and Casualty Company. Plaintiffs seek a declaration pursuant to R.C. Chapter 2721 that the *Charvat* claims fall within the "advertising injury" provision of the State Farm policy and that State Farm is required to defend and indemnify plaintiffs for any loss incurred with respect to the same ("Count I"). Plaintiffs further maintain that State Farm breached the terms of the insurance policy by refusing to honor its contractual obligation to defend and indemnify plaintiffs against the *Charvat* action ("Count II") and that State Farm also breached its duty of good faith, as its refusal, according to plaintiffs, was not predicated upon circumstances that would provide reasonable justification for the same ("Count III").

{¶ 9} Plaintiffs attached to their August 26, 2005 complaint a copy of various portions of the at-issue State Farm policy, as well as a copy of the January 4, 2005 *Charvat* complaint and State Farm's May 18, 2005 refusal letter.

{¶ 10} On April 3, 2006, Defendant State Farm filed a motion for judgment on the pleadings.[1] Therein, it argues that the policy defines an "insured" as anyone designated as such on the declarations page. State Farm cites the declarations page and argues that it lists only "Bryan R. Schuetz, d.b.a. Capital City Chiropractic" as an insured under the policy. As plaintiff Bryan Schuetz, D.C., Inc. is not listed as an insured on the policy declarations page, State Farm argues that it owes that entity no duty to defend it against any legal action(s). Thus,

---

1. Defendant State Farm contends that plaintiffs failed to attach a complete copy of the State Farm policy to their complaint herein, as required by Civ.R. 10(D), and State Farm remedies the same by attaching a complete copy of the at-issue policy to its motion.

State Farm maintains, it is entitled to judgment on the pleadings in its favor as to all claims asserted by plaintiff Bryan Schuetz, D.C., Inc.

{¶ 11} With respect to that argument, the court notes that plaintiff Bryan Schuetz, D.C., Inc. filed a notice of partial dismissal without prejudice on April 17, 2006, voluntarily dismissing all of its claims against defendant State Farm pursuant to Civ.R. 41(A)(1). Accordingly, State Farm's arguments with respect to the claims asserted by plaintiff Bryan Schuetz, D.C., Inc. are rendered moot by that dismissal, and the court's analysis of the pending motions will be limited solely to the claims asserted by plaintiff Bryan R. Schuetz, individual.

{¶ 12} In its April 3, 2006 motion for judgment on the pleadings, State Farm also maintains that it is entitled to judgment in its favor as to the claims asserted by plaintiff Bryan R. Schuetz, as the *Charvat* claims do not fall within the "advertising injury" provision of the policy, and State Farm has no duty to defend against them. In support of its argument, State Farm cites the policy language, which specifically provides coverage for damages because of an "advertising injury," which the policy then defines as, among other things, "oral or written publication of material that violates a person's right of privacy." Acknowledging that plaintiffs seek coverage based on the "right of privacy" definition of an "advertising injury," State Farm argues that the *Charvat* action does not implicate Charvat's right of privacy. Rather, State Farm argues that the *Charvat* action alleges that the Schuetz defendants violated the Telephone Consumer Protection Act, 47 U.S.C. 227(b)(1)(B) ("TCPA"), its related regulations, including Federal Regulation 47 C.F.R. 64.1200(a)(2), and the Ohio Consumer Sales Practices Act (hereinafter "OCSPA") and does not at all allege that the Schuetz defendants violated Charvat's right of privacy.

{¶ 13} State Farm contends that "[m]aking unsolicited prerecorded advertisement telephone calls is not an invasion of one's right of privacy, especially when the individual suing does not claim it to be such." State Farm thus maintains that as Charvat sued strictly on federal and state statutes and sought only statutorily prescribed damages, the *Charvat* claims are not covered by the policy, and State Farm does not owe Schuetz a duty to defend him against the same.

{¶ 14} State Farm further maintains that even if the court were to interpret the *Charvat* complaint as alleging a violation of one's right of privacy, the *Charvat* claims are still not covered by the policy, and a duty to defend still does not exist. State Farm acknowledges that while there are no Ohio cases addressing telephone solicitation violations in the context of insurance coverage, various federal courts that have considered insurance coverage of facsimile solicitation violations, and in doing so have analyzed policy language identical to the one involved in this case, counsel against an interpretation of one's "right of privacy"

to such an extent that the sending of unsolicited communication is deemed a covered "advertising injury" for insurance coverage purposes.

{¶ 15} Specifically, State Farm cites *Am. States Ins. Co. v. Capital Assocs. of Jackson Cty., Inc.* (C.A.7, 2004), 392 F.3d 939, in which the Seventh Circuit Court of Appeals held that sending unsolicited facsimiles did not constitute an invasion of one's right of privacy and thus was not covered under the policy, which defined advertising injury as including " 'oral or written publication of material that violates a person's right of privacy.' " [2] Id. at 940. In analyzing the meaning of "privacy," the court held that the word has many connotations, but its "two principal meanings are secrecy and seclusion, each of which has multiple shadings." Id. at 941. The Seventh Circuit focused on the policy's use of the word "publication" and held that "[t]he structure of the policy strongly implies that coverage is limited to secrecy interests. It covers a 'publication' that violates a right of privacy. In a secrecy situation, publication matters; otherwise secrecy is maintained. In a seclusion situation, publication is irrelevant. A late-night knock on the door or other interruption can impinge on seclusion without any need for publication." Id. at 942.

{¶ 16} State Farm further informs the court that the Fourth Circuit in *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.* (C.A.4, 2005), 407 F.3d 631, agreed with the Seventh Circuit's reasoning in *American States*, and based on the same, urges the court to find that Charvat's allegations in the underlying lawsuit do not constitute an "advertising injury," as the "telephone call was made directly to Charvat and did not violate a secret held by Charvat. There was no publication to a third party of a secret regarding Charvat, and again, Charvat never alleged or sought compensation for an invasion of his right to privacy. His only demand for compensation derived from statute, and not common law."

{¶ 17} State Farm further maintains that as it did not owe Schuetz a duty to defend him against the *Charvat* action, it cannot be found to have breached the terms of the policy. Moreover, as it had reasonable justification to decline coverage based on the absence of an invasion-of-privacy claim in the *Charvat* complaint, as well as the analysis and reasoning set forth in the above-cited cases, State Farm maintains that it cannot possibly be found to have breached its duty of good faith to Schuetz, and without any evidence of actual malice in its decision-making, there can be no viable claim for punitive damages.

{¶ 18} On April 17, 2006, plaintiffs filed a memorandum contra defendant's motion for judgment on the pleadings and a cross-motion for judgment on the pleadings. Therein, plaintiff Bryan Schuetz, D.C., Inc. concedes that it is not an

---

**2.** The *Am. States* definition of "advertising injury" is identical to that contained in the State Farm policy applicable herein.

insured under the State Farm policy and informs the court of its intent to dismiss its claims against defendant State Farm.[3] However, plaintiff Bryan R. Schuetz contends that he is entitled to partial judgment on the pleadings with respect to State Farm's obligation to defend and indemnify him against the *Charvat* action (Count I).

{¶ 19} Like State Farm, Schuetz acknowledges that the issue of insurance coverage for TCPA-based claims is one of first impression in Ohio. Unlike State Farm, Schuetz maintains that the court should "follow the prevailing weight of authority in other jurisdictions holding that Defendant's policy of insurance is obligated to cover the TCPA claims that were asserted against Plaintiffs."

{¶ 20} While Schuetz acknowledges that the *Charvat* complaint does not specifically mention an invasion of a right of privacy, Schuetz nonetheless argues that because Charvat claims damages due to violations of the TCPA, whether the *Charvat* claims are arguably or potentially covered under the State Farm policy as an "advertising injury" depends in part on the stated purpose behind the TCPA. Schuetz maintains that the TCPA's aim is to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home" and urges the court to adopt the "seclusion" definition of privacy.

{¶ 21} Schuetz further argues, in response to State Farm's argument regarding the policy's use of the word "publication," that the ordinary definition of that term is to "declare or announce to the public," and the placing of prerecorded automated telephone calls to consumers involves such a "publication." Schuetz argues that as State Farm chose not to define the terms "privacy" and "publication," it cannot now argue that "publication" is to be interpreted as the conveyance of a secret to a third party. Instead, the argument continues, those terms are to be given their plain and ordinary meaning, with any ambiguities interpreted in favor of the insured.

{¶ 22} Finally, with respect to the non-Ohio cases cited by State Farm in support of its argument for noncoverage, Schuetz argues that the cases "are in the distinct minority, as the overwhelming weight of authority from other jurisdictions holds that TCPA claims are covered under the advertising injury provisions of [commercial general liability] policies." In support of that argument, Schuetz cites *Park Univ. Ents. v. Am. Cas. Co. of Reading* (C.A.10, 2006), 442 F.3d 1239, *Hooters of Augusta, Inc. v. Am. Global Ins. Co.* (C.A.11, 2005), 157

---

**3.** Indeed, the record reflects that plaintiff Bryan Schuetz, D.C., Inc. filed a notice of partial dismissal without prejudice on April 17, 2006, dismissing its claims against defendant State Farm pursuant to Civ.R. 41(A)(1). As of the date of this decision, plaintiff Bryan R. Schuetz's claims against defendant State Farm are the only claims remaining herein.

Fed.Appx. 201, and *US Fax Law Ctr., Inc. v. iHire, Inc.* (D.Colo.2005), 362 F.Supp.2d 1248. In light of those decisions, Schuetz contends that State Farm can, at best, argue that there is "some doubt as to whether the *Charvat* Complaint contained allegations bringing the cause of action within policy coverage, but such doubt would require that State Farm assume Schuetz's defense."

{¶ 23} In light of the foregoing and pursuant to Ohio case law with respect to an insurer's duty to defend, Schuetz argues that State Farm should have accepted his defense even though there may have existed doubt as to whether the *Charvat* claims were covered. Schuetz argues that State Farm could not rely on any Ohio cases to support its noncoverage argument, and it therefore should have accepted the defense in light of *Westfield Cos. v. O.K.L. Can Line,* 155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45. As State Farm failed to do so, Schuetz argues, it breached its duty of good faith in its handling of Schuetz's claim for defense and coverage under the policy.

{¶ 24} On May 4, 2006, defendant State Farm filed its memorandum contra plaintiff's motion for judgment on the pleadings and reply memorandum to plaintiff's memorandum contra defendant's motion for judgment on the pleadings. State Farm maintains that the grammatical structure of subparagraph (b) of the policy's definition of "advertising injury," given its construction and when read in context with the rest of the definition, shows that it is not so much the "publication" but the "material" publicized that violates one's right of privacy. Thus, State Farm argues that the violation of a right of privacy contemplated by the policy is the "publication of something which an individual wishes to be kept private, as opposed to interfering with one's seclusion." State Farm cites *St. Paul Fire & Marine Ins. Co. v. Brunswick Corp.* (N.D.Ill.2005), 405 F.Supp.2d 890, in which a federal court, noting the split of opinion in the United States with respect to insurance coverage of TCPA claims as "advertising injury" claims, found that coverage did not exist because the unambiguous meaning of the words used, as well as the construction of the sentence and the context created by the rest of the definition, made it clear that the violation of one's right of privacy refers to the *content* of the material published and not the mere *act* of publishing itself.

{¶ 25} State Farm further argues that if the court accepts Schuetz's argument with respect to seclusion, the issue of whether the "material" published violates a person's right of privacy would be immaterial, for the act of publishing alone would suffice to constitute an intrusion upon one's seclusion, regardless of the content of the material published. Furthermore, State Farm maintains that the fact that it "did not specifically define 'violates a person's right of privacy' does not mean the phrase should not be given its plain and ordinary meaning in the context of the definition," further noting that it also did not define "slander" or

"libel," and its failure to do so does not automatically render the terms ambiguous.

{¶ 26} With respect to Schuetz's argument that the court should be mindful of the purpose behind the TCPA in its coverage analysis herein, State Farm notes that numerous courts have held that the purpose of the TCPA is not as germane as the parties' intent, as expressed in the contract terms themselves. State Farm specifically notes that in one of the cases cited by Schuetz, *Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, the court held, "Georgia law unambiguously directs us to search for the intentions of the parties to this insurance contract, not the intentions of distant federal lawmakers. We therefore must consider the ordinary meaning of the term 'privacy,' not whatever specialized meaning the word may have taken on in the context of the TCPA." *Hooters of Augusta*, 157 Fed.Appx. at 206.

{¶ 27} Moreover, if the court chooses to consider the purpose of the TCPA in interpreting "right of privacy," State Farm urges the court to then also consider the intent of the underlying claimant, Charvat. No stranger to litigation, the argument continues, Charvat has testified that (1) he "maintains two telephone answering machines at his home, in an effort to capture every telemarketing call, including even those arriving when he is otherwise absent from home or on vacation," (2) he has filed at least 53 civil actions with the Franklin County Common Pleas Court as of 2000, and (3) he has not yet, as of January 2005, registered his telephone numbers with the Federal "Do Not Call Registry." State Farm thus argues that as Charvat appears to be "voluntarily placing himself into a harmful situation merely to generate a damages lawsuit" and "purposely sets his traps for businessmen such as Bryan Schuetz who may technically violate the TCPA," how can one then argue that the claims set forth by Charvat should be interpreted as claims of invasion of his right of privacy?

{¶ 28} Finally, with respect to Schuetz's bad faith claim, State Farm maintains that as there is no Ohio authority on this issue, and in light of the split of opinions in the United States, it had a reasonable basis for its position that the TCPA-based claims did not constitute claims of invasion of one's right of privacy, and as such were not covered by the policy at issue. State Farm argues that it need not prevail on its coverage argument for it to be able to prevail on its bad-faith argument.

{¶ 29} On May 10, 2006, plaintiff Schuetz filed his reply memorandum to defendant's memorandum contra plaintiff's motion for judgment on the pleadings. Schuetz again argues that State Farm, in acknowledging the lack of Ohio precedent on this issue and the split among other jurisdictions, has virtually admitted that it breached its duty to defend Schuetz against claims that potentially or arguably could fall within the coverage provisions of the policy. Schuetz

argues that Ohio cases clearly establish that when there exists some doubt as to an insurer's duty to defend, the insurer must accept defense of the claim and litigate on behalf of the insured until the coverage issue is ultimately determined.

{¶ 30} With respect to whether the State Farm policy covers TCPA-based claims, Schuetz urges the court to interpret the policy strictly against the insurer and liberally in favor of the insured, focusing not on how the insurer intended the terms to be interpreted, but rather on how a reasonable person in the position of the policyholder would understand the terms. Schuetz then distinguishes *St. Paul Fire & Marine Ins. Co. v. Brunswick Corp.* by pointing out that "[a]dvertising injury" in *St. Paul Fire & Marine* is defined as "publication of material in your advertisement that violates a person's right of privacy," which differs from the policy language herein. As an "advertising injury" under the policy herein is defined as merely the "oral or written publication of material," Schuetz argues that "[t]he *St. Paul* definition makes it clear that more than just an advertisement is necessary to constitute a violation of a person's right of privacy, but rather, that certain material contained in the advertisement must violate the right of privacy." Finally, Schuetz argues that State Farm goes beyond the scope of a Civ.R. 12(C) motion for judgment on the pleadings by bringing in facts outside the four corners of the *Charvat* complaint—i.e., facts with respect to Charvat's litigation history and motivation for filing suit against the Schuetz defendants.

## LAW AND ANALYSIS

### I. JUDGMENT ON THE PLEADINGS

{¶ 31} A motion for judgment on the pleadings pursuant to Civ.R. 12(C) has been characterized as "a vehicle for raising the several defenses contained in Civ.R. 12(B) after the close of the pleadings." *Burnside v. Leimbach* (1991), 71 Ohio App.3d 399, 402, 594 N.E.2d 60, citing *Fischer v. Morales* (1987), 38 Ohio App.3d 110, 111, 526 N.E.2d 1098.

{¶ 32} A Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law. *Fontbank, Inc. v. CompuServe, Inc.* (2000), 138 Ohio App.3d 801, 807, 742 N.E.2d 674, citing *Compton v. 7–Up Bottling Co./Brooks Beverage Mgt.* (1997), 119 Ohio App.3d 490, 492, 695 N.E.2d 818. Thus, when reviewing a motion for judgment on the pleadings, courts are "restricted solely to the allegations in the pleadings, as well as any material incorporated by reference or attached as exhibits to those pleadings." [4] *Curtis v. Ohio Adult Parole Auth.,* Franklin App. No. 04AP–1214, 2006-Ohio-15, 2006 WL 23248, at ¶ 24, citing

---

**4.** As The Ohio Supreme Court noted in *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 664 N.E.2d 931, "Civ.R. 12(C) permits consideration of the complaint and answer, but a Civ.R. 12(B)(6) motion must be judged on the face of the complaint alone." Id. at 569, 664 N.E.2d 931.

*Drozeck v. Lawyers Title Ins. Corp.* (2000), 140 Ohio App.3d 816, 820, 749 N.E.2d 775; *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165, 63 O.O.2d 262, 297 N.E.2d 113; Civ.R. 7(A); Civ.R. 10(C).

{¶ 33} When assessing the merits of a Civ.R. 12(C) motion, trial courts are to construe all material allegations in the complaint, with all reasonable inferences to be drawn therefrom, as true and in favor of the party against whom the motion is made. *Peterson,* 34 Ohio St.2d at 165–166, 63 O.O.2d 262, 297 N.E.2d 113. Accordingly, a complaint is properly dismissed based on a Civ.R. 12(C) motion when a court "(1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the non-moving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931, citing *Lin v. Gatehouse Constr. Co.* (1992), 84 Ohio App.3d 96, 99, 616 N.E.2d 519.

## II.  INTERPRETATION OF INSURANCE CONTRACT

{¶ 34} The interpretation of an insurance contract is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus.  Courts interpreting insurance contracts are to give common words appearing in the written instrument their ordinary meaning, "unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Id. at paragraph two of the syllabus.  Furthermore, in the event insurance-policy provisions "are susceptible of more than one interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.'" *Sharonville v. Am. Emps. Ins. Co.,* 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, at ¶ 6, citing *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.  However, "[t]he liberal interpretation rule does not require that a court adopt a forced or strained construction of an insurance contract." *Knowlton v. Nationwide Mut. Ins. Co.* (1996), 108 Ohio App.3d 419, 423, 670 N.E.2d 1071, citing *New Amsterdam Cas. Co. v. Johnson* (1914), 91 Ohio St. 155, 158, 110 N.E. 475.

## III.  INSURER'S DUTY TO DEFEND

{¶ 35} The Ohio Supreme Court, in *Motorists Mut. Ins. Co. v. Trainor* (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, held, "The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make [a] defense, regardless of

the ultimate outcome of the action or its liability to the insured." Id. at paragraph two of the syllabus. Subsequently, in *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, the Ohio Supreme Court further defined the test as follows: "[w]here the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim." Id. at syllabus.

{¶ 36} Accordingly, pursuant to the "pleadings test" articulated by the Ohio Supreme Court, if the complaint contains an allegation "in any one of its claims *that could arguably be covered by the insurance policy,* even in part and even if the allegations are groundless, false, or fraudulent," the insurer has an absolute duty to defend the insured in such an action. (Emphasis added.) *Am. Emps.,* 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, at ¶ 13, citing *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, at paragraph one of the syllabus; *Motorists Mut. Ins. Co.,* 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, at paragraph two of the syllabus.

{¶ 37} Based on the foregoing, the two issues central to the court's determination of whether State Farm had a duty to defend Schuetz against the *Charvat* claims are (1) the allegations contained in the *Charvat* complaint itself and (2) the interpretation of the relevant portions of the policy at issue.

A. *The Charvat Complaint*

{¶ 38} Having reviewed the *Charvat* complaint, the court finds that it does not, on its face, specifically allege a claim of invasion of privacy. Rather, the court finds that Phillip Charvat, in his first through sixth causes of action, alleges that the Schuetz defendants violated the Telephone Consumer Protection Act, 47 U.S.C. 227(b)(1)(B), and Federal Regulation 47 C.F.R. 64.1200(a)(2), and that in his seventh through 14th causes of action, Charvat alleges that the Schuetz defendants also violated the Ohio Consumer Sales Practices Act by placing two unsolicited, prerecorded telephone calls to his residence, advertising their goods and/or services.

{¶ 39} However, in setting forth those claims Charvat makes numerous references to unsolicited telephone calls, undertaken without his prior consent. Specifically, Charvat alleges that the Schuetz defendants' "First Call was an 'unsolicited advertisement,'" and that the defendant failed to "obtain Plaintiff's prior express consent or approval before making the First Call * * *." Charvat makes the same allegations with respect to the second call. Thus, the court finds that the *Charvat* complaint implicitly alleges a violation of Charvat's privacy

interest in seclusion, even though it does not explicitly set forth a claim of "invasion of privacy."

{¶ 40} Having so found, the court must next determine whether the State Farm insurance policy can be interpreted so that the allegations contained in the *Charvat* complaint could be deemed covered claims of "advertising injury" based on the "invasion of privacy" portion of the definition.

B. *The State Farm Policy*

{¶ 41} Section II of the State Farm policy, titled "Comprehensive Business Liability," provides:

We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or *advertising injury to which this insurance applies.* No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under supplementary payments. This insurance applies only:

1. to bodily injury or property damage caused by an occurrence which takes place in the coverage territory during the policy period;

2. to personal injury caused by an occurrence committed in the coverage territory during the policy period. The occurrence must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

3. *to advertising injury caused by an occurrence committed in the coverage territory during the policy period.* The occurrence must be committed in the course of advertising your goods, products or services.

(Emphasis added.)

{¶ 42} The State Farm policy defines "advertising injury" as follows:

1. [A]dvertising injury means injury arising out of one or more of the following offenses:

a. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. *oral or written publication of material that violates a person's right of privacy;*

c. misappropriation of advertising ideas or styles of doing business; or

d. infringement of copyright, title or slogan.

(Emphasis added.)

{¶ 43} Neither party disputes that the prerecorded telephone calls took place during the policy coverage period or that they were undertaken in the course of

the Schuetz defendants' advertising of their goods, products, or services. Rather, the parties' dispute centers on whether the alleged violations of the TCPA and the OCSPA can be interpreted to constitute claims of "advertising injury" covered under the policy as "oral or written publication of material that violates a person's right of privacy."

{¶ 44} The parties correctly submit that the issue of insurance coverage of a TCPA-based claim as an "advertising injury" is one of first impression in Ohio, as the parties' research and that of the court has not uncovered any Ohio cases specifically addressing that issue. Indeed, even the non-Ohio jurisdictions that have considered that issue have done so in the context of unsolicited facsimiles, not unsolicited telephone calls.

C. *Other Jurisdictions' Interpretation of "Invasion of Privacy" and Analysis With Respect to Insurance Coverage of TCPA–Based Claims*

{¶ 45} The jurisdictions that have reviewed the issue of insurance coverage of TCPA-based claims as claims of "advertising injury" based on an "invasion of privacy" definition have acknowledged that "right of privacy" has two principal meanings: right to secrecy and right to seclusion. Specifically, as the Seventh Circuit held in *Am. States Ins. Co. v. Capital Assocs. of Jackson Cty., Inc.,* " '[p]rivacy' is a word with many connotations. The two principal meanings are secrecy and seclusion, each of which has multiple shadings. A person who wants to conceal a criminal conviction, bankruptcy, or love affair from friends or business relations asserts a claim to privacy in the sense of secrecy. A person who wants to stop solicitors from ringing his doorbell and peddling vacuum cleaners at 9 p.m. asserts a claim to privacy in the sense of seclusion." (Internal citations omitted.) Id., 392 F.3d at 941.

{¶ 46} The Fifth, Eighth, Tenth and Eleventh circuits, in interpreting "advertising injury" definitions similar to the one contained in the State Farm policy, have construed the definition as potentially implicating both one's right to secrecy and one's right to seclusion. *W. Rim Invest. Advisors, Inc. v. Gulf Ins. Co.* (C.A.5, 2004), 96 Fed.Appx. 960 (affirming *W. Rim Invest. Advisors, Inc. v. Gulf Ins. Co.* (N.D.Tex.2003), 269 F.Supp.2d 836); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.* (C.A.8, 2005), 401 F.3d 876, 881; *Park Univ. Ents.,* 442 F.3d at 1251; *Hooters of Augusta, Inc.,* 157 Fed.Appx. at 208. Meanwhile, the Fourth and, until recently, the Seventh Circuits have interpreted similar policy provisions as implicating one's right to secrecy only. *Resource Bankshares Corp.,* 407 F.3d at 642; *Am. States,* 392 F.3d at 943.

{¶ 47} Based on the foregoing, until recently, there existed an arguably significant split among the jurisdictions that have considered whether an insurer issuing a policy covering "advertising injury" has a duty to defend TCPA

lawsuits, with the Seventh and Fourth Circuits representing the minority view that insurance policies containing definitions of "advertising injury" virtually identical to the State Farm definition did not provide coverage for TCPA-based claims. In *Am. States*, the Seventh Circuit found the insurance policy, which defined "advertising injury" exactly like the State Farm policy here does, did not impose upon the insurer a duty to defend against TCPA-based claims, as the policy was meant to protect one's interest in privacy in terms of secrecy, while the TCPA was meant to protect one's interest in seclusion. The Seventh Circuit found support for its decision in the structure of the policy itself. *Am. States*, 392 F.3d at 940. Noting that the policy covered " 'publication' that violates a right of privacy," the Seventh Circuit found that "[i]n a secrecy situation, publication matters; otherwise, secrecy is maintained. In a seclusion situation, publication is irrelevant. A late-night knock on the door or other interruption can impinge on seclusion without any need for publication. * * * To put this differently, § 227(b)(1)(C) condemns a particular means of communicating an advertisement, rather than the contents of that advertisement—while an advertising-injury coverage deals with informational content." Id. at 942–943.

{¶ 48} In *Resource Bankshares Corp.*, the Fourth Circuit approved of and agreed with the Seventh Circuit's analysis in *American States* and held that the TCPA's prohibition against unsolicited facsimiles protects one's privacy interest in seclusion, while the insurance policy applicable to that case protects against damages arising from violations of content-based privacy. *Resource Bankshares Corp.*, 407 F.3d at 641–643.

{¶ 49} However, on November 30, 2006, and subsequent to the parties' respective motions and memoranda herein, the Illinois Supreme Court issued its decision in *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.* (2006), 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307. In *Valley Forge*, Swiderski's insurers sought declaratory judgment that they did not have a duty to defend Swiderski against a lawsuit, filed by an individual, Rizzo, on behalf of himself and those similarly situated, that alleged that Swiderski violated the TCPA by sending unsolicited facsimile advertisements. Under the applicable insurance policy, Valley Forge had a duty to defend Swiderski "against any suit seeking damages caused by 'personal and advertising injury,' " which the policy defined as "aris[ing] out of one or more of the following offenses: * * * [o]ral or written publication, in any manner, of material that violates a person's right of privacy * * *." *Valley Forge*, 223 Ill.2d at 356, 307 Ill.Dec. 653, 860 N.E.2d 307. The court notes that the definition of "advertising injury" in the Valley Forge policy is essentially identical to the State Farm definition, and although the Valley Forge policy defines "advertisement," like the State Farm policy, it does not define "publication" or "privacy." Id. Furthermore, the Illinois case law with respect to

the interpretation of an insurance policy and the existence of an insurer's duty to defend is essentially identical to that of Ohio. Id. at 362–363, 307 Ill.Dec. 653, 860 N.E.2d 307.

{¶ 50} In affirming the lower courts' decisions in favor of Swiderski, the Illinois Supreme Court held that insurers have a duty to defend TCPA-based claims under an insurance policy that provides coverage for "advertising injury" that includes "oral or written publication * * * of material that violates a person's right of privacy." *Valley Forge* held that "[g]iven that the TCPA protects a fax recipient's privacy interest in seclusion, and that Rizzo's complaint implicitly alleges a violation of that interest on behalf of Rizzo and the members of the proposed class, the question we must ask is whether the words in the 'advertising injury' provision of the policies issued to Swiderski indicate that Swiderski and the insurers intended the policies to cover the type of injury to privacy that is the subject of Rizzo's TCPA fax-ad claim. Based on the plain, ordinary, and popular meaning of those words, we believe this type of injury falls potentially within the coverage of the policies' 'advertising injury' provision." *Valley Forge*, 223 Ill.2d at 366, 307 Ill.Dec. 653, 860 N.E.2d 307. Affording the policy's undefined terms their plain and ordinary meaning, Valley Forge held that "[t]hese definitions confirm that 'right of privacy' connotes both an interest in seclusion and an interest in the secrecy of personal information. Accordingly, the policy language 'material that violates a person's right of privacy' can reasonably be understood to refer to material that violates a person's seclusion. Unsolicited fax advertisements, the subject of a TCPA fax-ad claim, fall within this category." Id. at 368, 307 Ill.Dec. 653, 860 N.E.2d 307.

{¶ 51} Thus, the Seventh Circuit recently departed the minority camp and implicitly joined the majority represented by the Fifth, Eighth, Tenth, and Eleventh Circuits in holding that an insurance policy, which defines "advertising injury" as, essentially, "oral or written publication of material that violates a person's right of privacy," provides coverage for a TCPA-based claim where the allegations that form the basis for that claim imply a violation of one's right of privacy in terms of seclusion. *Am. Home Assur. Co. v. McLeod USA, Inc.* (N.D.Ill.2007), 475 F.Supp.2d 766, 772. Those jurisdictions have based their decisions on the plain and ordinary meaning of the policy terms employed in defining "advertising injury," terms essentially identical to the ones in the State Farm policy. The court finds such analysis not only compelling but also appropriate, given Ohio's case law regarding the interpretation of insurance policies.

D. *Purpose of TCPA Not Determinative of Coverage of Charvat Claims*

{¶ 52} Plaintiff Schuetz urges the court to consider the purpose behind the TCPA in determining whether the right of privacy affected and alleged by

Charvat is one of secrecy or of seclusion. Indeed, plaintiff Schuetz attached to his cross-motion for judgment on the pleadings a copy of 47 U.S.C. 227 and argues that the stated purpose behind the TCPA is the protection of the "privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home."[5] State Farm, however, argues that if the court considers such extraneous materials, it must also consider the intent of Charvat, who is no stranger to litigation and has acknowledged that he "maintains two telephone answering machines at his home, in an effort to capture every telemarketing call, including even those arriving when he is otherwise absent from home or on vacation," has filed at least 53 civil actions with this court as of 2000 and has not yet, as of January 2005, registered his telephone numbers with the Federal "Do Not Call Registry." State Farm thus maintains that as Charvat appears to be "voluntarily placing himself into a situation merely to generate a damages lawsuit," he cannot possibly be setting forth claims that can be interpreted as alleging an invasion of his right of privacy in terms of seclusion.

{¶ 53} However, the court notes that its analysis herein is restricted "solely to the allegations in the pleadings, *as well as any material incorporated by reference or attached as exhibits to those pleadings.*" *Curtis,* 2006-Ohio-15, 2006 WL 23248, at ¶ 24, citing *Drozeck,* 140 Ohio App.3d at 820, 749 N.E.2d 775; *Peterson,* 34 Ohio St.2d at 165, 63 O.O.2d 262, 297 N.E.2d 113. While plaintiff Schuetz attached to his complaint a copy of the *Charvat* complaint, which refers to 47 U.S.C. 227 as one of the grounds for Charvat's claims, State Farm did not attach a copy of the journal entry in *Charvat v. Dish TV Now, Inc.,* case No. 04CVH–12–13064, to its answer or incorporate the same by reference. Thus, the court cannot consider Charvat's litigious history and underlying intent in determining the merits of the parties' respective motions for judgment on the pleadings, even though they seem to imply that Charvat could not care less about his right of privacy in terms of seclusion.

{¶ 54} The court notes that the jurisdictions cited herein, in determining the merits of the motions for summary judgment pending before them, considered the purpose of the TCPA in protecting the residents' privacy interests when deciding whether TCPA-based claims could be deemed to constitute claims of invasion of privacy in terms of seclusion. While the kind of privacy that the TCPA meant to protect may have been germane to those jurisdictions' analysis,

---

**5.** The court notes that *Am. States Ins. Co. v. Capital Assoc. of Jackson Cty., Inc.* (Dec. 9, 2003), S.D.Ill. No. 02–00975–DRH, 2003 WL 23278656, which plaintiff Schuetz cites, was overruled by *Am. States Ins. Co. v. Capital Assoc. of Jackson Cty. Inc.* (C.A.7, 2004), 392 F.3d 939. However, that decision is itself no longer controlling after the recent Illinois Supreme Court decision in *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.* (2006), 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307. See also *Am. Home Assur. Co. v. McLeod USA, Inc.* (N.D.Ill. 2007), 475 F.Supp.2d 766.

and while it may be germane herein to a slight degree, the court finds it more appropriate, under the circumstances of this case and pending motions, to refer to the allegations in the *Charvat* complaint itself and determine whether the allegations contained therein implicate one's right to privacy in terms of seclusion or secrecy or both. Thus, in determining the coverage issue specific to the *Charvat* complaint, as opposed to TCPA-based claims in general, it matters not what kind of privacy interest the TCPA is meant to protect; rather, what matters is whether *the policy in question* provides coverage for TCPA-based claims that allege invasion of one's right of privacy in terms of seclusion. As the court has found that the allegations set forth in the *Charvat* complaint imply a violation of one's right of privacy in terms of seclusion by alleging that the telephone calls were made without Charvat's prior express consent and/or approval, the court need not resort to the purpose behind the TCPA to determine whether those allegations potentially constitute covered claims.

{¶ 55} The court agrees with the Seventh Circuit Court of Appeals that "the question is not how the word 'privacy' was used in the debates that led to § 227(b)(1)(C), or in its implementing regulations, but what the word means in this insurance policy. To say, as the district court did, that § 227(b)(1)(C) protects privacy, and then stop the analysis, is to avoid the central question in the case: whether the policy covers the sort of seclusion interest affected by faxed ads [or unsolicited telephone calls]." *Am. States*, 392 F.3d at 942.

{¶ 56} The court likewise agrees with the Eleventh Circuit that "[w]hether Congress intended the provisions against unsolicited faxes to protect 'privacy,' and how much that intention factored into the passage of the law, is not relevant today. Georgia law unambiguously directs us to search for the intentions of the parties to this insurance contract, not the intentions of distant lawmakers. We therefore must consider the ordinary meaning of the term 'privacy,' not whatever specialized meaning the word may have taken on in the context of the TCPA." *Hooters of Augusta, Inc.*, 157 Fed.Appx. at 206. So, too, Ohio law directs this court to limit its analysis herein to the allegations contained in the pleadings, and any exhibits attached thereto, and to the interpretation of "invasion of privacy" as it pertains to the at-issue policy, in light of the terms' plain and ordinary meanings.

E.  *State Farm Has a Duty to Defend the Allegations Set Forth in the Charvat Complaint as "Advertising Injury" Consisting of the "Oral or Written Publication of Material That Violates a Person's Right of Privacy."*

{¶ 57} State Farm urges the court to adapt the content-based interpretation of "advertising injury" that has been espoused by fellow insurers with respect to

similarly worded insurance policies. State Farm contends that the at-issue policy, by defining "advertising injury" as the "oral or written *publication of material* that violates a person's right of privacy," affords coverage only with regard to *material* that violates one's right to secrecy. Schuetz, however, argues the definition of "advertising injury," given the term's plain and ordinary meaning, could also be interpreted to cover conduct that violates one's right to seclusion, i.e., the making of an unauthorized and unsolicited telephone call that intrudes upon one's right to be left alone. Thus, it appears that State Farm urges the court to focus on the content of the material being published as being indicative of what is covered, while Schuetz argues that the court should focus on the intrusive act itself in the publishing of the material, regardless of its content.

{¶ 58} As previously noted, the *Charvat* complaint alleges that the Schuetz defendants violated the TCPA and the OCSPA by making telephone calls that were unsolicited and without obtaining Charvat's prior express consent and/or approval. The complaint also alleges that the Schuetz defendants violated the applicable federal and state statutes by failing to identify the business entity or individual initiating the call, failing to identify the telephone number of the business entity or individual making the call, and failing to state at the beginning of the solicitation that the purpose of the call was to make a sale. It therefore appears that the *Charvat* complaint identifies both the act of making the unsolicited telephone call and the content of the material communicated during the call as the basis for the alleged violations. The court notes that although some of the allegations are content-based, they do not identify the violations as consisting of the disclosure of information or secrets pertaining to Charvat, but rather as the failure to disclose various information required by the applicable statutes. Thus, while it does not explicitly set forth a claim of invasion of privacy, the court finds that the *Charvat* complaint implies that Charvat's right of privacy, in terms of seclusion, was violated by the unsolicited telephone calls.

{¶ 59} Having so found, the court must next determine whether, based on the plain and ordinary meaning of the terms employed, the State Farm policy is intended to cover the type of injury to privacy alleged in the *Charvat* complaint that is the subject of Charvat's TCPA-based claims.

{¶ 60} Ohio case law directs courts, when interpreting an insurance policy, to "give undefined words used in an insurance contract their plain and ordinary meaning" unless another meaning is apparent from the contents of the policy. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, citing *Miller v. Marrocco* (1986), 28 Ohio St.3d 438, 439, 28 OBR 489, 504 N.E.2d 67; *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11. The general rule in contract interpretation is that a contract should be read "to give effect to the intention of the parties."

*Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. One must read a contract as a whole, with the intent of each section derived from consideration of the whole. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519. However, "where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King,* 35 Ohio St.3d at 211, 519 N.E.2d 1380.

{¶ 61} According to the policy, State Farm has a duty to defend Schuetz if Charvat has alleged damages sustained because of an "advertising injury." The State Farm policy defines "advertising injury" as, among other things, the "oral or written publication of material that violates a person's right of privacy." As the policy does not define "publication," "material," or "privacy," the court must look to their plain and ordinary meaning to ascertain the policy's intent with respect to the same.

{¶ 62} "Publication," according to Webster's Dictionary, is "the act or process of publishing; a published work," with "publish" being further defined as "to make generally known; to make public announcement of; to place before the public: disseminate." [6] Black's Law Dictionary defines it as "to make public; to make known to people in general; to bring before public; to exhibit, display, disclose or reveal." [7] Black's Law Dictionary also acknowledges that the term "is both a business term meaning printing and distribution of written materials and a legal term meaning communication of libelous matter to a third person." The District Court for the Northern District of Texas, while interpreting the term "publication" in *W. Rim Invest. Advisors, Inc. v. Gulf Ins. Co.,* agreed that " 'publication' is a term of art when used in defamation causes of action, connoting that the defamatory statements must be communicated to a third party before they are actionable," but found that the term "does not necessarily carry the same baggage when employed in the context of invasion-of-privacy torts. An invasion-of-privacy claim based on intrusion upon seclusion, for instance, does not require that its factual underpinnings include an allegation of publication to a third party." *W. Rim Invest. Advisors, Inc.,* 269 F.Supp.2d at 846–847. Likewise, the court herein finds the term "publication" is not limited to a term of art used in defamation and other torts that require the communication of objectionable material to a third party. As the Illinois Supreme Court noted in *Valley*

---

6. All references to Webster's Dictionary herein are to Webster's Ninth New Collegiate Dictionary.

7. All references herein to Black's Law Dictionary are to Black's Law Dictionary, Abridged, 6th Edition.

*Forge,* to adopt such an interpretation and hold the policy applicable only "where the content of the published material reveals private information about a person that violates that person's right of privacy—would essentially require us to rewrite the phrase 'material that violates a person's right of privacy' to read 'material *the content of which* violates a person *other than the recipient's* right of privacy.' This we will not do." *Valley Forge,* 223 Ill.2d at 369, 307 Ill.Dec. 653, 860 N.E.2d 307.

{¶ 63} "Material," meanwhile, is defined by Webster's Dictionary as "the elements, constituents, or substances of which something is composed or can be made; something (as data) that may be worked into a more finished form; something used for or made the object of study." As other jurisdictions have noted, this definition is quite broad and most definitely encompasses advertisements. However, due to its broad definition, examining the term in isolation is not very helpful, and we must examine it in connotation with "material that violates a person's right of privacy." *Valley Forge,* 223 Ill.2d at 367, 307 Ill.Dec. 653, 860 N.E.2d 307.

{¶ 64} "Privacy," according to Webster's Dictionary, is defined as "the quality or state of being apart from company or observation: seclusion; freedom from unauthorized intrusion; secrecy." According to Black's Law Dictionary, "right of privacy" means "the right to be let alone; the right of a person to be free from unwarranted publicity; and right to live without unwarranted interference by the public in matters with which the public is not necessarily concerned." With respect to right of privacy in terms of an invasion of one's privacy, Black's Law Dictionary notes that such a tort claim can fall into one of four classes, including "intrusion, consisting of intrusion upon the plaintiff's solitude or seclusion, as by invading the plaintiff's home, eavesdropping, as well as persistent and unwanted telephone calls," and as "public disclosure of private facts, consisting of a cause of action in publicity, of a highly objectionable kind, given to private information about the plaintiff."

{¶ 65} Based on the foregoing, "material" could refer to the content of something, thereby lending support to State Farm's argument that the policy is meant to protect one's right to secrecy. However, as the plain and ordinary meaning of "privacy" also refers to "freedom from unauthorized intrusion," the policy also potentially covers one's right to be left alone. Accordingly, the court finds that "oral or written publication of material that violates a person's right of privacy" could pertain to a violation of one's right of privacy in terms of secrecy and also to a violation of one's right of privacy in terms of seclusion.

{¶ 66} The jurisdictions that have considered this issue have found that the receipt of an unsolicited facsimile is an invasion of one's right of privacy in

terms of seclusion. As the plain and ordinary meaning of "privacy" includes both the right to secrecy and the right to seclusion, and as the receipt of an unsolicited telephone call, by its very nature, is much more intrusive than a facsimile, the court finds that Charvat's allegations that Schuetz caused two unsolicited telephone calls to be made to Charvat's residence constitute allegations of a violation of his right to "freedom from unauthorized intrusion."

{¶ 67} Accordingly, the court finds that Charvat has alleged conduct that potentially constitutes an "advertising injury" as defined in the State Farm policy, and State Farm thus had a duty to defend Schuetz against those allegations. As an insurer has an absolute duty to defend whenever a complaint contains an allegation "in any one of its claims *that could arguably be covered by the insurance policy,* even in part and even if the allegations are groundless, false, or fraudulent," the court finds that State Farm breached its duty in refusing to defend Schuetz against the *Charvat* action. (Emphasis added.) *American Emps.,* 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, at ¶ 13, citing *Sanderson,* 69 Ohio St.3d 582, 635 N.E.2d 19, at paragraph one of the syllabus; *Motorists Mut. Ins. Co.,* 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, at paragraph two of the syllabus. Based on the foregoing, State Farm's arguments for judgment on the pleadings in its favor with respect to Count I and Count II of Schuetz's complaint are not well taken.

## ·IV. INSURER'S DUTY TO INDEMNIFY

{¶ 68} Schuetz's cross-motion for judgment on the pleadings seeks a partial judgment on the pleadings and asks that the court "grant the declaration requested in the first Count of Plaintiffs' Complaint that the Defendant was obligated to defend *and indemnify* this Plaintiff under the terms of its policy of insurance for the TCPA claims that had been asserted by Philip J. Charvat." (Emphasis added.) Indeed, in Count I, plaintiffs request a declaration as to the "parties' respective rights, duties and obligations under the said policy of insurance," thereby referring to State Farm's "duty to defend and/or *indemnify* these Plaintiffs." (Emphasis added.)

{¶ 69} However, an insurer's "duty to defend against a claim arises in a different manner from a duty to indemnify for any liability that results from that claim." *Elevators Mut. Ins. Co. v. Scassa,* Wayne App. No. 03CA0045, 2004-Ohio-3428, 2004 WL 1463040, at ¶ 12, citing *W. Lyman Case & Co. v. Natl. City Corp.* (1996), 76 Ohio St.3d 345, 347, 667 N.E.2d 978. "While a duty to defend arises if the allegations in the pleadings state a claim 'potentially and arguably' within the policy's coverage, * * * the duty to indemnify, on the other hand, arises only if liability in fact exists under the policy." *Elevators Mut. Ins. Co.,* 2004-Ohio-3428, 2004 WL 1463040, at ¶ 12, citing *Wedge Prod., Inc. v. Hartford*

*Equity Sales Co.* (1987), 31 Ohio St.3d 65, 67, 31 OBR 180, 509 N.E.2d 74; *Chemstress Consultant Co. v. Cincinnati Ins. Co.* (1998), 128 Ohio App.3d 396, 402, 715 N.E.2d 208.

{¶ 70} However, the parties' respective arguments have centered on State Farm's duty to defend, not its duty to indemnify. As Schuetz himself contradictorily states in the conclusion of his cross-motion, "[i]t is important to keep in mind here that the test of State Farm's liability in this case is not whether it must ultimately indemnify Schuetz for the Charvat claims. Rather, the proper test is whether State Farm breached a duty to defend Schuetz against the Charvat claims, such a duty arising under Ohio law at any time that claims potentially or arguably fall within a policy's coverage."

{¶ 71} Accordingly, and as the court cannot determine State Farm's duty to indemnify without reference to additional information and facts [8] with respect to the underlying allegations, the court hereby declines to render a decision with respect to indemnification at this time. Thus, the court denies that portion of Schuetz's cross-motion for judgment on the pleadings requesting a declaration as to State Farm's duty to indemnify.

## V. BAD-FAITH CLAIM

{¶ 72} Schuetz correctly argues that Ohio law imposes upon an insurer a duty of good faith in the handling and payment of an insured's claim(s). *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 6 OBR 337, 452 N.E.2d 1315. See also *Hart v. Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347, at paragraph two of the syllabus. Such a duty is " 'immanent in the contract whether the company is attending to the claims of third persons against the insured or the claims of the insured itself.' " Id., quoting *Gruenberg v. Aetna Ins. Co.* (1973), 9 Cal.3d 566, 575, 108 Cal.Rptr. 480, 510 P.2d 1032. However, the court agrees with State Farm's argument that "[w]hether this Court ultimately agrees with State Farm's position regarding coverage is a decision separate and apart from deciding whether State Farm acted in good faith. State Farm is not required to prevail on the coverage issue to prevail on the issue of bad faith."

---

8. On that issue, the court finds instructive the analysis in *Chemstress Consultant Co. v. Cincinnati Ins. Co.* (1998), 128 Ohio App.3d 396, 715 N.E.2d 208, in which the Ohio Supreme Court held that a determination of an insurer's duty to indemnify requires additional information, as the duty "is based on whether there is, in fact, liability under the policy. * * * The trial court could not make such a determination without some proof of the actual facts underlying the * * * plaintiffs' complaint." Id. at 402, 715 N.E.2d 208, citing *Riverside Ins. Co. v. Wiland* (1984), 16 Ohio App.3d 23, 26, 16 OBR 24, 474 N.E.2d 371; *Erie Ins. Exchange v. Colony Dev. Corp.* (June 12, 2001), Franklin App. Nos. 00AP–1334, 00AP–1335, 2001 WL 641144.

{¶ 73} In *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, the Ohio Supreme Court held that "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Id. at paragraph one of the syllabus. In so holding, the court overruled the intent requirement in *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228, noting that such action was necessary because "[r]ather than clarify the standard of proof required in the area of bad faith * * * [the *Said* decision] caused greater confusion by erroneously making intent an element of the tort of bad faith." *Zoppo*, 71 Ohio St.3d at 554, 644 N.E.2d 397.

{¶ 74} In his complaint, Schuetz maintains that State Farm's "refusal to honor its coverage obligation for the Charvat Claims has not been predicated upon circumstances that furnish reasonable justifications therefore, thus, constituting a *willful* breach of duty to act in good faith." (Emphasis added.) However, as intent is no longer relevant post-*Zoppo*, the court finds Schuetz's allegation that the breach was "willful" is immaterial.

{¶ 75} Acknowledging that *Zoppo* involved an insurer's bad faith failure to *process a claim*, the Ohio Supreme Court in *Roberts v. United States Fid. & Guar. Co.* (1996), 75 Ohio St.3d 630, 665 N.E.2d 664, declined to extend the *Zoppo* standard to a case involving an insurer's bad faith failure to *defend a claim*, stating, "We decline to extend *Zoppo* to this particular case of bad faith failure to defend, as *Zoppo* was decided after the trial court's and court of appeals' decisions in this case. This case has been litigated for over ten years and should come to final resolution before this court." *Roberts*, 75 Ohio St.3d at 633, 665 N.E.2d 664. However, in an often-cited footnote, *Roberts* held, "While we decline to extend *Zoppo* to this particular case of bad faith failure to defend, we leave it open as to whether *Zoppo* may be applied to future cases." Id. at fn. 1.

{¶ 76} Although not specifically citing *Zoppo* as establishing the standard for a bad-faith claim in the context of an insurer's duty to defend, the appellate court in *Westfield Cos. v. O.K.L. Can Line*, 155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45, nonetheless acknowledged the "reasonable justification" arguments espoused in furtherance of such a claim. ("To show that its failure to defend was reasonably justified, Westfield argued that * * * [the defendant] knew [that] the 'true facts' of the * * * allegations did not concern an 'advertising injury' * * *. Ultimately, Westfield claimed, the decision not to defend was reasonably justified because there was no coverage under the policy. Ultimately, the jury found that Westfield's failure to defend was reasonably justified." *Westfield*, 155 Ohio App.3d 747, 2003-Ohio-7151, 804 N.E.2d 45, at ¶ 47.) Furthermore, appellate courts have applied the *Zoppo* "reasonable justification" standard to bad-faith claims in the context of an insurer's failure to defend.

*Chiropractic Clinic of Solon, Inc. v. Natl. Chiropractic Mut. Ins. Co.* (Dec. 10, 1998), Cuyahoga App. No. 73584, at 8, 1998 WL 855623 ("a policy holder can succeed on a bad faith claim only if it can prove that the insurer, in denying a request for coverage, lacked reasonable justification for its position"). Accordingly, the court finds that the inquiry with respect to Schuetz's bad faith claim based on State Farm's refusal to defend is whether State Farm's refusal to provide a defense was "predicated upon circumstances that furnish reasonable justification therefor." *Zoppo*, 71 Ohio St.3d 552, 644 N.E.2d 397, at paragraph one of the syllabus.

{¶ 77} Schuetz argues that State Farm breached its duty of good faith in refusing to provide a defense because even if there existed a question as to whether the *Charvat* complaint set forth allegations that were potentially or arguably covered, State Farm had a duty to accept the defense thereof. As State Farm breached its duty to defend, Schuetz maintains that State Farm also breached its duty of good faith. However, there is a difference between a breach of one's duty to defend and a breach of one's duty to act in good faith.

{¶ 78} Notably, the cases dealing with bad-faith claims for failure to defend have assessed the existence of bad faith after a finding that a duty to defend did not exist; thus, as there was no duty to defend, the courts have reasoned that there could be no bad faith on the insurer's part in refusing to defend. However, based on the analysis undertaken by courts reviewing a bad-faith claim in the context of an insurer's failure to process a claim, the court does not believe that a finding of a duty to defend necessarily means that an insurer breached its good-faith duty in refusing to defend the claim(s).

{¶ 79} As the Ohio Supreme Court noted in *Hart v. Republic Mut. Ins. Co.* and *Hoskins v. Aetna Life Ins. Co.*, "[m]ere refusal to pay insurance is not, in itself, conclusive of bad faith. But when an insured insists that it was justified in refusing to pay a claim of its insured because it believed there was no coverage of the claim, ' * * * such a belief may not be an arbitrary or capricious one. The conduct of the insurer must be based on circumstances that furnish reasonable justification therefor.'" *Hoskins*, 6 Ohio St.3d at 276–277, 6 OBR 337, 452 N.E.2d 1315, citing *Hart*, 152 Ohio St. at 188, 39 O.O. 465, 87 N.E.2d 347. While the court in both cases was looking at a bad-faith claim in the context of nonpayment of a claim, the court finds that similar reasoning is applicable in the context of an insurer's refusal to defend.

{¶ 80} Although it is impossible to have acted in bad faith if there was no duty to defend to begin with, the court does not believe that the opposite is always true, i.e., that the refusal to defend where a duty is later found to have existed is proof of bad faith on the insurer's part in refusing the defense. The crux of the analysis with respect to the existence of an insurer's duty to defend deals with

whether the underlying complaint contains an allegation "in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false, or fraudulent." *Am. Emps.,* 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, at ¶ 13. If so, the insurer has a duty to defend the insured in such an action. Id. However, the analysis with respect to an insurer's breach of its duty of good faith in refusing to defend a claim centers around whether the insurer's decision was predicated upon circumstances that furnish reasonable justification for the same. *Zoppo,* 71 Ohio St.3d 552, 644 N.E.2d 397, at paragraph one of the syllabus. Thus, the standard with respect to an insurer's duty to defend, which directs courts to look within the four corners of the underlying complaint and then compare the allegations therein with the policy language contained within the four corners of the insurance policy itself while it accounts for any ambiguity that may exist regarding the coverage of a claim and directs courts to question whether a theory of recovery within the policy coverage has been pleaded, it does not take into consideration the reasonable-justification analysis that is a part of the standard of review with respect to an insurer's duty of good faith.

{¶ 81} If one were to view the two standards in concert, the determination of one would appear to be dependent upon the determination of the other, leading one into a circular reasoning pattern. However, the analysis in *Hart* leads the court to believe that the existence of a duty to defend and the existence of bad faith in refusing to defend should be viewed as the separate claims that they are, each determined under its own unique standard. Although there is an argument to be made that the circumstances furnishing the reasonable justification should include the "if there is a question as to coverage you must defend" case law, the court finds that automatic resort to the same in arguing in favor of bad faith would obviate the need for the "reasonable justification" standard with respect to a bad-faith claim. In other words, there would be no need to go through the "reasonable justification" analysis when an insured pleads bad faith based on refusal to defend, for the duty-to-defend standard does not appear to leave any room for discretion to refuse a defense as long as a claim is arguably covered, leading the way for automatic bad-faith claims whenever an insurer declines to defend a claim that is subsequently found to have been done in error.

{¶ 82} State Farm's refusal letter says that the *Charvat* allegations are not the result of an accident and that the damages alleged are not the result of an advertising injury as defined by the policy. Furthermore, it says that the business-liability exclusion on pages 21 and 24 of the policy preclude coverage for this loss, citing the provision that excludes coverage for advertising injury "arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." In its motion seeking judgment on the

pleadings, State Farm maintains that its refusal to defend was based on the jurisdictional split with respect to the coverage of TCPA-based claims as "advertising injury" claims under an invasion-of-privacy definition. Specifically, State Farm argues that the analysis set forth in cases such as *Am. States* and *Resource Bankshares Corp.*, in light of the language of the at-issue policy, formed the basis for its decision to refuse the defense of the *Charvat* claims. Thus, State Farm argues that its decision was based on "circumstances that furnished reasonable justification therefor."

{¶ 83} Obviously, in the absence of any decisions creating a question as to whether something is or arguably may be covered under an insurance policy, an insurer would lack any reasonable justification for its refusal to defend. However, where there are federal circuits that have sided with an insurer's interpretation of policy language, it cannot be said that the insurer's decision to decline defense was not based on circumstances that furnish a reasonable justification therefor.

{¶ 84} Based on the foregoing, the court finds that State Farm did not breach its duty of good faith in declining to defend against the *Charvat* claims, as its decision to do so was not "arbitrary or capricious" but was based on "circumstances that furnish reasonable justification therefor." Accordingly, the court finds State Farm's argument for judgment on the pleadings in its favor with respect to Schuetz's bad-faith claim to be well taken. Likewise, as State Farm's refusal was based on "reasonable justification," Schuetz's request for punitive damages must also fail, for there cannot be "hatred, ill-will or spirit of revenge" when one's actions are based on circumstances that furnish reasonable justification for the same. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174; *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 75, 529 N.E.2d 464, citing *Hoskins,* 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, at paragraph two of the syllabus

{¶ 85} Accordingly, the court hereby grants in part Plaintiff Bryan R. Schuetz's April 17, 2006 cross-motion for judgment on the pleadings with respect to defendant State Farm's duty to defend and denies in part plaintiff Bryan R. Schuetz's April 17, 2006 cross-motion for judgment on the pleadings with respect to defendant State Farm's duty to indemnify. The court also grants in part defendant State Farm Fire and Casualty Company's April 3, 2006 motion for judgment on the pleadings with respect to plaintiff Bryan R. Schuetz's bad-faith and punitive-damages claims and denies in part defendant State Farm Fire and Casualty Company's April 3, 2006 motion for judgment on the pleadings with respect to the remaining arguments therein.

So ordered.