MOTORISTS MUTUAL INSURANCE COMPANY, Appellant,

v.

DANDY–JIM, INC., d.b.a. Brookgate Tire & Auto Center, et al., Appellees.

[Cite as *Motorists Mut. Ins. Co. v. Dandy–Jim, Inc.*, 182 Ohio App.3d 311, 2009-Ohio-2270.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92023.

Decided May 14, 2009.

312

Day Ketterer, Ltd., and Merle D. Evans III, for appellant.

Kolick, Georgeadis & Ernewein Co., L.P.A., and David Kolick, for appellee Dandy–Jim, Inc.

Joseph R. Compoli Jr. and James R. Goodluck; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellees Kevin Chambers, Dennis Dawson, Felix Fedor, and Ali Mohammadpour.

CHRISTINE T. MCMONAGLE, Judge.

{¶ 1} This is an insurance-coverage case. We are asked to decide whether the trial court erred in ruling that plaintiff-appellant, Motorists Mutual Insurance Company ("Motorists"), was obligated to defend its insured, Dandy–Jim, Inc., in a suit alleging a violation of the federal Telephone Consumer Protection Act ("TCPA") due to the transmission of unsolicited facsimile advertisements. We find no error and affirm.

## Background

{¶ 2} The TCPA, Section 227, Title 47, U.S.Code et seq., protects the privacy interests of persons by placing restrictions on unsolicited, automated telephone calls and unsolicited faxed advertisements.

{¶ 3} In 2007, defendants-appellees, Kevin Chambers, Dennis Dawson, Felix Fedor, and Ali Mohammadpour (collectively, the "claimants"), filed suit against Dandy–Jim, Inc., d.b.a. Brookgate Tire & Auto Center ("Dandy–Jim"). Claimants alleged that during the years 2001 through 2004, Dandy–Jim violated the TCPA by sending them unsolicited junk fax advertisements and, hence, they were entitled to statutory awards authorized by the TCPA. They sought statutory damages of $500 for each violation and statutory treble damages for "willful" or "knowing" violations.[1] The case was assigned case No. CV–583434.

{¶ 4} At the time of the activities alleged in the complaint, Dandy–Jim was insured under a commercial general liability policy issued by Motorists and, accordingly, tendered a claim for coverage under its policy. After receiving notice of the lawsuit, Motorists provided a defense to Dandy–Jim subject to a reservation of rights.

{¶ 5} Motorists subsequently filed this action for declaratory judgment (case No. CV–092023) against Dandy–Jim and the claimants, seeking a declaration that it did not have a legal or contractual obligation under the policy to provide coverage or a defense to Dandy–Jim for the claimants' allegations in case No. CV–583434. The trial court stayed case No. CV–583434 pending resolution of the coverage issues in case No. CV–092023.

{¶ 6} The claimants subsequently moved for summary judgment on the coverage issue, as did Motorists. The claimants argued that Motorists was obligated to defend Dandy–Jim under the "advertising injury" provision of Dandy–Jim's

---

1. Claimants further alleged that they were qualified to serve as class representatives of a purported class consisting of all persons and entities within the 216 and 440 area codes to whom Dandy–Jim had allegedly transmitted unsolicited facsimile advertisements from 2001 to 2004. Claimants subsequently dismissed the class-action claims without prejudice.

policy with Motorists, which provided coverage for injury arising out of the "oral or written publication of material that violates a person's right of privacy." Motorists, on the other hand, argued that no coverage existed under the "advertising injury" provision of the contract. The trial court subsequently granted the claimants' motion and ruled that "Motorists is obligated to defend the insured, Dandy–Jim, against any suit arising out of any violation of the TCPA regarding the transmission of unsolicited fax advertisements."

{¶ 7} Motorists now appeals from the trial court's judgment.

## Discussion

### I. Standard of Review

{¶ 8} Generally, summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267. In this case, there is no issue of fact; the dispute before the court involves a question of law, that is, the interpretation of an insurance contract. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. Such questions are likewise appropriate for determination on summary judgment. *Lovewell v. Physicians Ins. Co. of Ohio* (1997), 79 Ohio St.3d 143, 145, 679 N.E.2d 1119. Questions of law are reviewed de novo. Id., citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

### II. Interpretation of Insurance Contracts

{¶ 9} When interpreting a contract, a court should give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We give common words in the contract their plain and ordinary meaning "unless manifest absurdity results, or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander,* supra, at paragraph two of the syllabus. If the terms are susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. *Sharonville v. Am. Employers Ins. Co.,* 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6.

### III. Insurer's Duty to Defend

{¶ 10} "An insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy." Id., ¶ 13, citing *Sanderson v. Ohio Edison Co.* (1994), 69 Ohio St.3d 582, 635 N.E.2d 19, paragraph one of the syllabus.

#### A. The Motorists Policy

{¶ 11} Under Section I of the policy, titled "Coverage B Personal and Advertising Injury Liability," Motorists promised that it would "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." The "Definitions" section of the policy defined "advertising injury," among other things, as "oral or written publication of material that violates a person's right of privacy." The policy did not define "publication," "material," or "right of privacy."

#### B. The Claimants' Second Amended Complaint

{¶ 12} The claimants' second amended complaint alleged that Dandy–Jim violated the TCPA by sending unsolicited advertisements via fax machine. It further alleged that Dandy–Jim "did not obtain 'prior express invitation or permission' before sending these advertisements by fax." Thus, the complaint implicitly alleged a violation of the claimants' privacy interest in seclusion, even though it did not explicitly allege an invasion of the right to privacy.

{¶ 13} Accordingly, we must determine whether claimants' claims are covered claims of "advertising injury" under the policy provided by Motorists to Dandy–Jim. Specifically, did the trial court err in ruling that the sending of unsolicited faxes in alleged violation of the TCPA constitutes "oral or written publication of material that violates a person's right to privacy?"

#### C. Secrecy vs. Seclusion

{¶ 14} Ohio recognizes that the right of privacy includes both the right of seclusion and the right of secrecy. *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, paragraph one of the syllabus. A person asserting the privacy right of seclusion asserts the right to be free, in a particular location, from disturbance by others. *Schuetz v. State Farm Fire & Cas. Co.,* 147 Ohio Misc.2d 22, 2007-Ohio-7267, 890 N.E.2d 374, ¶ 45, citing *Am. States Ins. Co. v. Capital Assocs. of Jackson Cty., Inc.* (2004 C.A.7), 392 F.3d 939, 941. A person claiming the privacy right of secrecy asserts the right to prevent disclosure of personal information to others. *Schuetz* at ¶ 45. The TCPA protects a person's privacy interest in seclusion. *Valley Forge Ins. Co. v. Swiderski Elec., Inc.* (2006), 223 Ill.2d 352, 366, 307 Ill.Dec. 653, 860 N.E.2d 307.

{¶ 15} Motorists first contends that there is no coverage for claimants' claims because the TCPA protects only against intrusions against an individual's right to *seclusion*, while the "advertising injury" coverage in its policy provides coverage only for intrusions against the *secrecy* aspect of the right to privacy. Specifically, Motorists argues that since "advertising injury" under the policy is defined as "oral or written *publication* of material that violates a person's right of privacy," (emphasis added), and publication is relevant only to the secrecy aspect of the right to privacy, there is no coverage.

{¶ 16} Motorists directs us to *Am. States,* 392 F.3d 939, and its progeny, to support its argument. In *Am. States,* the insurance policy at issue, like the policy in this case, defined "advertising injury" to include "oral or written publication of material that violates a person's right of privacy." Id. at 940. The Seventh Circuit Court of Appeals, interpreting Illinois law, found that the policy did not cover the seclusion interest affected by unsolicited fax advertisements because "[i]n a secrecy situation, publication matters * * * [whereas] [i]n a seclusion situation, publication is irrelevant." Id. at 942. The court reasoned that "[a] late-night knock on the door or other interruption can impinge on seclusion without any need for publication." Id.

{¶ 17} *Am. States* served as the basis for other decisions on which Motorists also relies to support its argument: specifically, *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.* (E.D.Penn.2006), 432 F.Supp.2d 488; *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.* (C.A.4, 2005), 407 F.3d 631; *ACS Sys., Inc. v. St. Paul Fire & Marine Ins. Co.* (2007), 147 Cal.App.4th 137, 53 Cal.Rptr.3d 786; and *Erie Ins. Exchange v. Watts* (S.D.Ind.2006), No. 1:05–CV–867–JDT–TAB, 2006 WL 1547109. In these cases, the courts likewise found no duty to defend the insured because the advertising-injury clauses at issue did not cover the invasion against seclusion envisioned by the TCPA's unsolicited-fax prohibition.

{¶ 18} However, *Am. States* was abrogated by the Illinois Supreme Court in *Valley Forge,* 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307, in which the Illinois high court, construing an advertising-injury clause like the one at issue here, expressly declined to follow the Seventh Circuit's interpretation of Illinois law in *Am. States* and found that TCPA claims were indeed covered under the policy. The court reasoned that relying "on the proposition that 'publication' matters in a 'secrecy situation,' but not in a 'seclusion situation' * * * as a basis for interpreting the insurance policy language" was inconsistent with the court's approach of construing undefined insurance policy terms by using their plain and ordinary meaning. Id.

{¶ 19} Moreover, *Melrose Hotel,* 432 F.Supp.2d 488, *Resource Bankshares,* 407 F.3d 631, and *ACS Sys.,* 147 Cal.App.4th 137, 53 Cal.Rptr.3d 786, are distinguish-

able from this case because the policy language at issue in those cases was different from the language at issue here. Specifically, the advertising-injury provision in those cases covered damages arising from "making known" to any person or organization written or spoken material that violated a person's right of privacy. As the Eleventh Circuit recognized in *Hooters of Augusta, Inc. v. Am. Global Ins. Co.* (C.A.11, 2005), 157 Fed.Appx. 201, this tighter wording of the policies was a significant factor in the courts' decisions, as "oral or written publication" does not suggest the same focus on secrecy that "making known" does. Id. at 208. Furthermore, in *Melrose Hotel,* the court "went so far as to note that courts that had found a duty to defend for TCPA violations under other 'advertising injury' provisions had 'considered broader language, which could arguably be read to include violations of the right to be left alone, the privacy right protected by the TCPA.' The 'broader language' to which the court referred was identical to the language at issue here: 'oral or written publication of material that violates a person's right to privacy.' " *Valley Forge,* 223 Ill.2d at 378, 307 Ill.Dec. 653, 860 N.E.2d 307.

{¶ 20} We too decline to follow the reasoning of Am. States and its progeny. As aptly explained in *Schuetz,* "in determining the coverage issue specific to the [claimants'] complaint, as opposed to TCPA-based claims in general, it matters not what kind of privacy interest the TCPA is meant to protect; rather, what matters is whether *the policy in question* provides coverage for TCPA-based claims that allege invasion of one's right of privacy in terms of seclusion. * * * [A]s the plain and ordinary meaning of 'privacy' also refers to 'freedom from unauthorized intrusion,' the policy also potentially covers one's right to be left alone. Accordingly, * * * 'oral or written publication of material that violates a person's right of privacy' could pertain to a violation of one's right of privacy in terms of secrecy and also to a violation of one's right of privacy in terms of seclusion." (Emphasis sic.) 147 Ohio Misc.2d 22, 2007–Ohio–7267, 890 N.E.2d 374 at ¶ 65.

### D. Material and Publication

{¶ 21} Motorists next argues that the advertising-injury coverage in the policy was not triggered, because the "material" faxed did not violate the claimants' right to privacy. Specifically, Motorists contends that it is not the mere fact of publication that triggers coverage; rather, the *content* of the faxed material must violate an individual's right to privacy and, because there is no suggestion here that the faxes contained any objectionable content (that is, personal or confidential information), then the publication of such material does not fall within the definition of "advertising injury" under the policy.

{¶ 22} Motorists contends that the "last-antecedent rule" dictates this interpretation of the contract. The rule is a rule of construction that provides that qualifying language in a statute or contract modifies the last antecedent before that language, that is, the word or phrase most immediately preceding the qualifying language. Thus, Motorists contends, the phrase "violates a person's right to privacy" refers to the word "material" and not the word "publication," and because the content of the material (the unsolicited faxes) was not objectionable, there was no violation of the recipient's right to privacy.

{¶ 23} Motorists' argument fails, however, because the content of the unsolicited faxes—advertising—was indeed objectionable. One of the stated purposes of the TCPA is to protect individuals from receiving unsolicited faxed advertisements. See Sections 227(b)(2)(B)(ii)(I) and 227(b)(2)(C), Title 47, U.S.Code. "The Act presumes that all advertising, so long as it is unsolicited, is an offensive intrusion into the recipient's solitude." *TIG Ins. Co. v. Dallas Basketball, Ltd.* (2004), 129 S.W.3d 232, citing *W. Rim Invest. Advisors v. Gulf Ins. Co.* (N.D.Tex.2003), 269 F.Supp.2d 836. In other words, the unsolicited faxed advertisement itself is the "material" that is offensive and violative of the individual's right of privacy.

{¶ 24} Motorists' claim regarding content would graft onto the policy a requirement that does not appear on its face. As stated by the Illinois Supreme Court in *Valley Forge,* "[t]o adopt the insurers' proposed interpretation of [the 'advertising injury' clause]—i.e., that it is only applicable where the content of the published material reveals private information about a person that violates the person's right of privacy—would essentially require us to rewrite the phrase 'material that violates a person's right of privacy' to read 'material *the content of which* violates a person *other than the recipient's* right of privacy.' This we will not do." (Emphasis sic.) 223 Ill.2d at 369–370, 307 Ill.Dec. 653, 860 N.E.2d 307.

{¶ 25} Motorists next argues that no advertising-injury coverage was triggered because "publication" requires disclosure to a third person or party, which did not happen here. Motorists contends that the alleged fax communications were sent directly to the claimants, not to any third person or parties, and, hence, no publication ever occurred to trigger coverage.

{¶ 26} Motorists' argument fails. We agree that "publication" is a term of art when used in defamation causes of action, connoting that the defamatory statements must be communicated to a third party before they are actionable. *Stohlmann v. WJW TV, Inc.,* 8th Dist. No. 86491, 2006-Ohio-6408, 2006 WL 3518121, ¶ 8. However, an invasion-of-privacy claim based upon seclusion does not require that its factual underpinning include an allegation of publication to a third person. See, e.g., *Sustin v. Fee* (1982), 69 Ohio St.2d 143,

145–146, 23 O.O.3d 182, 431 N.E.2d 992 ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person"). Furthermore, there is nothing in the Motorists policy that suggests that "publication" means communicating the offending material to a third party.

{¶ 27} Moreover, faxed advertisements are an act of "publication" in the ordinary sense of the word. Webster's Third New International Dictionary defines "publication" as "communication (as of news or information) to the public," and alternatively as "the act or process of issuing copies * * * for general distribution to the public." Webster's Third New International Dictionary (2002) 1836. Likewise, Black's Law Dictionary defines "publication" as "[g]enerally, the act of declaring or announcing to the public" and alternatively as "[t]he offering or distribution of copies of a work to the public." Black's Law Dictionary (8th Ed.2004) 1264. By faxing advertisements to the claimants, as alleged in the complaint, Dandy–Jim "published" the advertisements by communicating information to the public and distributing copies of the advertisements to the public.

### E. Marginal Contact with the Claimants

{¶ 28} Motorists next argues that there is no advertising-injury coverage because Dandy–Jim sent only a "few" unsolicited faxes to each of the claimants and these "few marginal, direct" contacts were not an intrusion into seclusion sufficient to constitute a violation of the right to privacy. Motorists further argues that there was no violation of the claimants' right of privacy because to establish a claim for invasion of privacy, a claimant must establish something beyond a mere inconvenience, and Dandy–Jim's few faxes were insufficient to do so.

{¶ 29} We disagree. As discussed earlier, the TCPA presumes that *all advertising*, so long as it is unsolicited, is an offensive intrusion into the recipient's solitude. Accordingly, even a single unsolicited advertising fax is sufficient to establish a violation of an individual's right to privacy.

{¶ 30} The claimants have alleged conduct that potentially constitutes an "advertising injury" as defined in the Motorists policy, and Motorists thus has a duty to defend Dandy–Jim against those allegations. Accordingly, the trial court did not err in granting summary judgment in favor of the claimants.

{¶ 31} Appellant's first assignment of error is overruled.

## IV. Public Policy

{¶ 32} In its second assignment of error, Motorists argues that the trial court erred in granting summary judgment in favor of appellees because the public policy of Ohio prohibits insuring against punitive damages. See, e.g., *Casey v. Calhoun* (1987), 40 Ohio App.3d 83, 531 N.E.2d 1348. Motorists contends that the treble damages authorized by the TCPA, and sought by claimants, are such punitive damages.

{¶ 33} But the claimants are not seeking punitive damages; they are seeking damages under the TCPA. The amounts of such damages are specified by the statute. The TCPA provides for the higher of actual damages, or damages of $500 per violation. Section 227(b)(3)(B), Title 47, U.S.Code. The award may be increased to "not more than 3 times the amount available under subparagraph (B)" if the violation was committed "willfully or knowingly." Section 227(b)(3), Title 47, U.S.Code.

{¶ 34} Motorists has offered no evidence that Congress intended TCPA damages to be punitive in nature. To the contrary, the purpose of the statutory-damages provision of the TCPA is to "liquidate uncertain actual damages and to encourage victims to bring suit to redress violations." *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.* (E.D.Mo.2004), 300 F.Supp.2d 888, 893. In addition, damages under the TCPA are "set to be fair." 137 *Cong. Rec.* S.16, 204, 16, 205–206 (daily ed. Nov. 7, 1991). Hence, the TCPA is a remedial law. *Jemiola v. XYZ Corp.*, 126 Ohio Misc.2d 68, 2003-Ohio-7321, 802 N.E.2d 745, ¶ 22. See also *Terra Nova Ins. Co. v. Evan Fray–Witzer* (2007), 449 Mass. 406, 421, 869 N.E.2d 565 (aims of TCPA to liquidate damages and encourage victims to bring suit "do not necessarily punish the offending advertisers so much as ensure that consumers do not refrain from bringing suit to protect their statutory rights"); *Universal Underwriters*, 401 F.3d at 881 ("it is clear that the fixed [damages] amount [of the TCPA] serves more than purely punitive or deterrent goals").

{¶ 35} The public policy prohibiting the protection of insurance for punitive damages stems from the underlying assumptions that an individual should not be able to escape punishment for his or her intentionally malicious acts and that the deterrent effect of punitive damages would be diminished if tortfeasors can be indemnified against them. *Casey,* 40 Ohio App.3d 83, 531 N.E.2d 1348. However, no showing of intentional malice is required to obtain treble damages under the TCPA if the fax advertisements were sent "willfully." "[T]o establish a willful violation of the TCPA for an award of treble damages, a plaintiff must prove that the defendant consciously and deliberately committed or omitted an act that violated the statute, irrespective of any intent to violate the

law." *Charvat v. Ryan,* 116 Ohio St.3d 394, 2007-Ohio-6833, 879 N.E.2d 765, ¶ 18. Thus, a willful or knowing violation of the TCPA is different from an intentionally malicious act that could give rise to punitive damages. See also *Penzer v. Trans. Ins. Co.* (C.A.11, 2008), 545 F.3d 1303, 1311 (public policy prohibiting insuring against punitive-damage liability not applicable to TCPA claims, because statutory damages not designed to be punitive and punitive damages require "wanton disregard for the rights of others").

{¶ 36} As the treble-damages provision of the TCPA is not punitive in nature, we find no public policy prohibiting insurance coverage for treble damages under the TCPA.

{¶ 37} Appellant's second assignment of error is overruled.

Judgment affirmed.

KILBANE, P.J., and STEWART, J., concur.