TELECOMMUNICATIONS NETWORK DESIGN and Paradise Distributing, Inc., Appellants

v.

The BRETHREN MUTUAL INSURANCE COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued May 18, 2010.
Filed Aug. 23, 2010.
Reargument Denied Oct. 27, 2010.

David Oppenheim, Rolling Meadow, IL, for appellant, Pro Hac Vice.

William J. Rogers, Pittsburgh, for appellee.

BEFORE: ALLEN, LAZARUS, and FREEDBERG *, JJ.

OPINION BY FREEDBERG, J.:

Appellants, Telecommunication Network Design ("TND") and Paradise Distributing, Inc. ("Paradise"), appeal from the May 10, 2007 Order of the Court of Common Pleas of Philadelphia County which, in this declaratory judgment action, held that Appellee Brethren Mutual Insurance Company ("Brethren") had no duty to defend Paradise under certain provisions of two insurance policies. For the reasons discussed below, we affirm.

The relevant facts of this case are taken from the trial court's May 10, 2007 decision. The parties do not dispute the underlying factual background. Appellant Paradise Distributing Inc. ("Paradise") was an office supply company, which supplied, among others products, fax machine paper, toner, and supplies. Paradise was insured under two successive Business Owners' Liability Coverage insurance polices issued by Appellee Brethren Mutual Insurance Company ("Brethren"). The policies covered the periods from July 8, 2001 through July 8, 2002, and July 8, 2002, through July 8, 2003. During that period, Paradise transmitted over one million unsolicited advertising faxes. Appellant Telecommunications Network Design, Inc. ("TND") was the recipient of one of those faxes.

In May 2003, TND filed a class action suit, ("the underlying action"), in the Circuit Court of Cook County Illinois, Chancery Division, under a federal statute, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and under Illinois law. In the action, TND claimed to represent a class of persons and entities who had wrongfully received faxes sent by Paradise. Subsequently, the underlying action was certified as a class action lawsuit. Brethren refused to defend and indemnify Paradise under the policies. Ultimately Paradise and TND settled the underlying action, and the trial court entered judgment against Paradise in the total amount of $3,999,999.00. However, judgment was to be satisfied only from the proceeds of the policies, which were assigned to the plaintiff class.

On January 25, 2006, Paradise and TND filed the instant declaratory judgment action in the Court of Common Pleas of Philadelphia County. On October 2, 2006, they filed an amended complaint in the Court of Common Pleas, alleging that Brethren acted in bad faith in denying coverage. On October 18, 2006, the trial court bifurcated the issues of coverage and indemnity, reasoning that the issues of indemnification and bad faith were pertinent only if Brethren had a duty to defend in the underlying action. The parties filed motions for judgment on the pleadings on the issue of coverage.

On May 10, 2007, the trial court granted in part and denied in part Paradise and TND's motion for judgment on the pleadings and denied Brethren's motion for judgment on the pleadings. The trial court ruled that there was no duty to defend under the "personal injury" and "advertising injury" provisions of the policies, but a duty to defend existed under the "property damages" provision of the policies because the amended complaint in the underlying action contained averments asserting the possibility that Paradise had unintentionally transmitted the advertisements to the plaintiff class.

---

* Retired Senior Judge assigned to the Superior Court.

Paradise and TND then moved for summary judgment, claiming that Brethren's refusal to defend Paradise in the underlying action estopped it from denying responsibility to indemnify Paradise. On October 31, 2007, that motion was denied. On March 8, 2008, the trial court granted Brethren's second motion for judgment on the pleadings on all but one of the bad faith claims.

Following discovery, all parties moved for summary judgment with respect to the issue of indemnification under the "property damages" provision of the policies. The motions were denied by Order of September 8, 2008.

A non-jury trial was scheduled for March 24, 2009. However, immediately prior to trial, Paradise and TND agreed to the dismissal with prejudice of all remaining claims under the "property damages" coverage and the one remaining claim of bad faith filed pursuant to 42 Pa.C.S.A. § 8371.

The instant appeal of the May 10, 2007 Order followed. Appellants were not ordered to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), and the trial court did not issue an additional 1925(a) opinion.

Paradise and TND argue that the trial court erred when it held that Brethren was not required to defend under the "advertising damages" provision of the policies. As this appeal presents an issue of law, our review is plenary. *Trowbridge v. McCaigue*, 992 A.2d 199, 201 (Pa.Super.2010) (internal quotations marks and citations omitted).

Paradise and TND argue that the trial court erred in finding that Brethren did not have a duty to defend under the "advertising damages" provision of the policies. The policies provide in relevant part:

> [w]e will pay those sums that the insured becomes legally obligated to pay as damages because of ... "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result.

First Policy, § A.1.a; Second Policy, § A.1.a.[1] An "advertising injury" is covered only if "caused by an offense committed in the course of advertising your goods, products or services." First Policy, § A.1.b.2.b; Second Policy, § A.1.b.2.b. The policies define advertising injury as:

> ... injury arising out of one or more of the following offenses:
>
> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> b. Oral or written publication of material that violates a person's right of privacy;
>
> c. Misappropriation of advertising ideas or style of doing business; or
>
> d. Infringement of copyright, title or slogan.

First Policy, § F.1.; Second Policy § F.1.

▮ The rules of insurance contract interpretation are well-settled.

> The task of interpreting an insurance contract is generally performed by a court rather than by a jury. The purpose of that task is to ascertain the

---

1. The Second Policy also states that "we will have no duty to defend the insured against any 'suit' seeking damages for ... 'advertising injury' to which this insurance does not apply." Second Policy, § A.1.a. This language makes explicit what was implicit in the First Policy, and does not alter the provided coverage.

intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, a court is required to give effect to that language. When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. Finally, in determining what the parties intended by their contract, the law must look to what they clearly expressed. Courts in interpreting a contract, do not assume that its language was chosen carelessly. Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties.

*401 Fourth St., Inc. v. Investors Ins. Group*, 583 Pa. 445, 879 A.2d 166, 171 (2005) (internal quotation marks and citations omitted). "Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense, and we may inform our understanding of these terms by considering their dictionary definitions." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 108 (1999) (internal citations omitted).

▬▬▬ The trial court found that Brethren did not have a duty to defend Appellant Paradise. The duty to defend is broader than the insurer's duty to indemnify. *Kvaerner Metals Div. of Kvaerner U.S. Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 896 n. 7 (2006). Whether or not a duty to defend exists is determined by comparing the complaint to the policy. *Id.* at 896. Lastly, a court attempting to determine whether a duty to defend exists must examine the facts in the underlying complaint, not the legal theories advanced in the complaint. *Erie Ins. Exchange v. Fidler*, 808 A.2d 587, 590 (Pa.Super.2002).

Paradise and TND contend that Paradise's actions fall within the "advertising injury" clause of the policy, specifically the clause which includes, "oral or written publication of material that violates a person's right of privacy." First Policy, § F.1.; Second Policy § F.1. Paradise and TND contend that this is so because TND's complaint arose under the TCPA, and the "junk fax" ban contained within the TCPA protects privacy rights. Brethren disagrees. Brethren responds that the trial court's interpretation of the policy is consistent with Pennsylvania law and that the duty to defend pursuant to the advertising clause is triggered only if the *content* of the faxed material violates the privacy of the recipient.

This is an issue of first impression for Pennsylvania. However, numerous state and federal courts have considered whether violations of the TCPA are covered by insurance policies that include similar or identical language to that at issue in the instant matter. Some courts have ruled in favor of coverage and others have ruled against coverage. *See Auto–Owners Insurance Company v. Websolv Computing, Inc.*, 580 F.3d 543 (7th Cir.2009) (against coverage); *Park University Enterprises, Inc. v. American Casualty Company of Reading, Pa.*, 442 F.3d 1239 (10th Cir. 2006) (for coverage); *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631 (4th Cir.2005) (against coverage); *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876 (for coverage); *American States Ins. Co. v. Capital Assoc. of Jackson*

*County, Inc.*, 392 F.3d 939 (7th Cir.2005) (against coverage); *American Home Assurance Co. v. McLeod USA, Inc.*, 475 F.Supp.2d 766 (N.D.Ill.2007) (for coverage); *Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co.*, 432 F.Supp.2d 488 (E.D.Pa.2006) (against coverage); *Hooters of Augusta, Inc. v. American Global Ins. Co.*, 272 F.Supp.2d 1365 (S.D.Ga.2003) (for coverage); *Western Rim Investment Advs. Inc. v. Gulf Ins. Co.*, 269 F.Supp.2d 836 (N.D.Tex.2003) (for coverage); *Prime TV, LLC. v. Travelers Ins. Co.*, 223 F.Supp.2d 744 (M.D.N.C.2002) (for coverage); *Terra Nova Ins. Co. v. Fray–Witzer*, 449 Mass. 406, 869 N.E.2d 565 (Ma.2007) (for coverage); *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill.2d 352, 307 Ill. Dec. 653, 860 N.E.2d 307 (2006) (for coverage); *Motorists Mut. Ins. Co. v. Dandy–Jim, Inc.*, 182 Ohio App.3d 311, 912 N.E.2d 659 (2009) (for coverage); *ACS Systems, Inc. v. St. Paul Fire and Marine Ins. Co.*, 147 Cal.App.4th 137, 53 Cal. Rptr.3d 786 (2007) (against coverage); *TIG Ins. Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232 (Tex.Ct.Appellant.2004) (for coverage). After a review of these cases, this Court is persuaded by the decision of the United States District Court for the Eastern District of Pennsylvania in *Melrose Hotel Company v. St. Paul Fire and Marine Insurance Company*, 432 F.Supp.2d 488 (E.D.Pa.2006), which applied Pennsylvania policy interpretation rules to an insurance policy containing a nearly identical clause to that in the instant matter and concluded that there was no duty to defend.

■ As in *Melrose*, the underlying complaint does not reference an invasion of privacy. Rather, the underlying complaint alleged that the unsolicited faxes imposed costs without authorization on the class members by using their paper, ink, and equipment. However, Paradise and TND argue that by alleging a violation of the TCPA in the underlying complaint, TND has sufficiently asserted an invasion of privacy, because the TCPA is a privacy-protecting statute.

■ As discussed in *Melrose*, 432 F.Supp.2d at 500–01, it is well-settled that the TCPA was enacted, in part, to protect privacy. *See also Resource Bankshares Corp.*, 407 F.3d at 642 (TCPA was passed in part to address the invasion of privacy caused by the sending of unsolicited faxes) (citing cases); *ACS Systems, Inc.*, 53 Cal. Rptr.3d at 795 (same). However, the TCPA was not passed because of concerns about the private nature of the content of the materials sent by fax. Rather, the motivation was concern for the intrusion caused by unsolicited faxes. *Melrose, supra.* Thus, the TCPA was enacted to protect one's right to be let alone, "the right to seclusion," rather than protecting against the disclosure of personal or private information. *Id.* at 501. A number of courts have held that because the TCPA protects some form of privacy interests, TCPA violations are covered under the "advertising injury" provisions. *See Western Rim Investment Adv.*, 269 F.Supp.2d at 847; *Park University Enterprises, Inc., v. American Casualty Co. of Reading, Pa.*, 314 F.Supp.2d 1094, 1109 (D.Kan.2004), *aff'd*, 442 F.3d 1239 (10th Cir.2006). However, while we agree with this reading of Congressional intent, Congress's intent in enacting the TCPA does not control the issue of what the parties agreed to in entering into the insurance contracts.

After reviewing the relevant portions of the policies, we agree with the trial court that the "advertising injury" clause is clear and unambiguous and that Paradise's actions are not covered by that provision of the policy. The courts that have construed these policies have correctly noted that the fact that the term "privacy" is not

defined and can imply several meanings is insufficient to create ambiguity. *Resource Bankshares,* 407 F.3d at 640; *Melrose,* 432 F.Supp.2d at 501. When the term is read within the context of the policies, it is clear, for the reasons discussed below, that the term "privacy" is confined to secrecy interests.

As noted above, the term "advertising injury" includes certain specific offenses:

- Libel or slander in or using covered material;

- Publication of material that violates a person's right of privacy;

- Misappropriation of advertising ideas or style of doing business;

- Infringement of copyright, title or slogan.

First Policy, § F.1.; Second Policy § F.1. These offenses refer to the content of the material covered by the policies. Libel, slander, misuse of another's ideas or style, and copyright infringement, specifically focus on the message contained in the covered materials. *Melrose,* 432 F.Supp.2d at 502. None of these provisions address the intrusive nature of the method used to convey the message. Rather, the focus is on the content of the message itself. *Id.*

The underlying action did not complain about the content of the faxes but focused on the monetary costs caused by the depletion of class member's resources that resulted from the unauthorized faxes. While the complaint contains a TCPA claim, it addresses the privacy interests that arise from one's right to be left alone. This is not the privacy interest addressed and covered by the "advertising injury" clause of the policies. *Id.* The trial court did not err in holding that Appellee did not have a duty to defend under the "advertising injury" clause of the policies.

Order AFFIRMED. Jurisdiction RELINQUISHED.

Judge ALLEN files a Dissenting Opinion.

DISSENTING OPINION BY ALLEN, J.:

For the reasons that follow, I respectfully dissent.

Here, Paradise Distributing, Inc. ("Paradise") sent over one million "blast faxes" to various recipients. In a class action lawsuit, the plaintiffs alleged that Paradise's conduct violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. This federal law grants citizens a privacy right to be free from unsolicited faxes. *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.,* 442 F.3d 1239, 1249 (10th Cir.2006).

Brethren Mutual Insurance Company ("Brethren") issued insurance policies to Paradise. These policies covered Paradise for liability that it incurred in connection with "oral or written publication of material that violates a person's right of privacy." Appendix A at 3.

As noted by the Majority, the jurisdictions are split as to whether an unsolicited advertisement falls within this particular "advertising injury" clause. Maj. Op. at 335–36.

Unlike the Majority, I am persuaded by those cases that have found in favor of coverage. *See, e.g., Penzer v. Transp. Ins. Co.,* 29 So.3d 1000 (Fla.2010) (collecting cases). Like the Florida Supreme Court in *Penzer,* I believe that a plain meaning analysis compels this result:

Here, the policy language at issue is, "oral or written publication of material that violates a person's right of privacy." Three terms—"publication," "material," and "right of privacy"—are particularly relevant, and none are defined by the

policy. Consequently, the first step towards discerning the plain meaning of the phrase is to consult references that are commonly relied upon to supply the accepted meaning of the words.

The first term, "publication" is defined as "communication (as of news or information) to the public: public announcement" or as "the act or process of issuing copies (as a book, photograph, or musical score) for general distribution to the public." *Webster's Third New International Dictionary* 1836 (1981). The definition also refers the reader to the definition of "publish." *Id.* To publish is "to place before the public (as through a mass medium): DISSEMINATE." *Id.* at 1837. Here, sending 24,000 unsolicited blast-facsimile advertisements to Mr. Penzer and others is included in the broad definition of "publication" because it constitutes a communication of information disseminated to the public and it is "the act or process of issuing copies ... for general distribution to the public."

"Material" has several definitions, two of which are "of, relating to, or consisting of matter," and "something (as data, observations, perceptions, ideas) that may through intellectual operation be synthesized or further elaborated or otherwise reworked into a more finished form or a new form or that may serve as the basis for arriving at fresh interpretations or judgments or conclusions." *Id.* at 1392. In this case, the faxed paper containing the unwanted advertisement meets the definition of "material" since a faxed advertisement "consist[s] of matter," and "something that may ... be synthesized or further elaborated or ... may serve as the basis for arriving at fresh interpretations or judgments or conclusions."

A "right" is "something to which one has a just claim" or "something that justly accrues or falls to one: something that one may properly claim: one's due." *Id.* at 1955. This plain meaning of "right" invokes the legal authority one must possess in order to assert a proper claim.

Because the policy provides coverage for a violation of a *"right* of privacy," which can only arise from the law, it is not necessary to separately discern the plain meaning of "privacy." If "privacy" was not preceded by "right of" then the dictionary definition of "privacy" would be relevant under a plain meaning analysis. Stated another way, the plain meaning of "right of privacy" is the legal claim one may make for privacy, which is to be gleaned from federal or Florida law, rather than defined by a dictionary. In this case, the source of the right of privacy is the TCPA, which provides the privacy right to seclusion.

As stated previously, the policy provision provides coverage for a written publication of material that violates a person's right of privacy. The facts of the instant case demonstrate that there was a written dissemination of 24,000 facsimiles that violated the TCPA. Comparing the policy's language to [the facts of this case]: there was a written publication [dissemination] of material [of 24,000 facsimiles] that violated a person's right of privacy [that violated the TCPA]. Therefore, applying our plain meaning analysis, we hold that Transportation's insurance policy provides coverage for sending unsolicited fax advertisements in violation of the TCPA.

*Id.* at 1005–07 (some citations and internal quotation marks omitted).

Therefore, given the plain language of the advertising injury clause, I conclude that Brethren had a duty to defend the underlying action.

Alternatively, in my view, the varying interpretations endorsed by the courts supports the conclusion that the language at issue is ambiguous, being susceptible to more than one reasonable interpretation. As the Supreme Court of Massachusetts pronounced:

> Although we are aware that an insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants, in evaluating the ambiguity of the phrase, we cannot ignore the body of national case law addressing the same or similar policy language and falling on both sides of this interpretive ledger. It is fair to say that even the most sophisticated and informed insurance consumer would be confused as to the boundaries of advertising injury coverage in light of the deep difference of opinion symbolized in these cases.

*Terra Nova Ins. Co. v. Fray–Witzer,* 449 Mass. 406, 869 N.E.2d 565, 573 (2007) (citation and footnote omitted); *accord Penzer,* 29 So.3d at 1008–09 (Pariente, J. concurring, joined by Canday, J.) ("The insurer in this case has contended that the wording of the policy provides coverage for situations where the *content* of the material—and not the act of sending it—violates a person's right of privacy. While that is one reasonable interpretation of the policy, it is not the only reasonable interpretation."); *see Valley Forge Insurance Co. v. Swiderski Electronics, Inc.,* 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307, 317 (2006) (discussing definitions from Black's Law Dictionary) ("These definitions confirm that 'right of privacy' connotes *both* an interest in seclusion and an interest in the secrecy of personal information.") (emphasis supplied).

Therefore, at the very least, the advertising injury clause in this case is ambiguous. As a result, the contractual provision must be construed against Brethren, the drafter of the agreement, and coverage must be provided for the insured, Paradise. *Mitsock v. Erie Ins. Exch.,* 909 A.2d 828, 831 (Pa.Super.2006) ("Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.").

For the above-stated reasons, I dissent from the Majority's conclusion that Brethren did not have a duty to defend Paradise in the underlying action. Accordingly, I would reverse the trial court's order and would remand for further proceedings.