[Cite as *Acuity, A Mut. Ins. Co. v. Siding & Insulation Co.*, 2016-Ohio-1381.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103180**

---

# ACUITY, A MUTUAL INSURANCE COMPANY

PLAINTIFF-APPELLEE

vs.

# THE SIDING AND INSULATION COMPANY

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-829429

**BEFORE:** S. Gallagher, J., Keough, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** March 31, 2016

**ATTORNEYS FOR APPELLANT**

Scott D. Simpkins
Climaco Wilcox Peca Tarantino & Garofoli Co., L.P.A.
55 Public Square
Suite 1950
Cleveland, Ohio   44113-9925

Jeffrey A. Berman
David M. Oppenheim
Brian J. Wanca
Anderson & Wanca
3701 Algonquin Road, Suite 760
Rolling Meadows, Illinois   60008

Phillip Bock
134 N. LaSalle Street, Suite 1000
Chicago, Illinois   60602


**ATTORNEYS FOR APPELLEE**

Jay Clinton Rice
Gary L. Nicholson
D. John Travis
Gallagher Sharp
1501 Euclid Avenue
7th Floor, Bulkley Building
Cleveland, Ohio   44115

SEAN C. GALLAGHER, J.:

**{¶1}** Defendant-appellant, The Siding and Insulation Co. ("The Siding Company"), appeals the trial court's decision to grant the motion for summary judgment of plaintiff-appellee, Acuity, A Mutual Insurance Company ("Acuity"), and to deny the defendant's motion for summary judgment in this declaratory judgment action. Upon review, we affirm.

**{¶2}** The central dispute in this action is whether Acuity is obligated to provide property-damage coverage to fund the remaining $2 million balance of an approximately $4 million underlying judgment, arising from claims under the federal Telephone Consumer Protection Act ("the TCPA"), 47 U.S.C. 227 et seq.

### The Underlying Action

**{¶3}** This declaratory judgment action follows from a settlement that was reached in *The Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, N.D.Ohio No. 1:11-CV-01074, which was a class action lawsuit filed in the United States District Court for the Northern District of Ohio ("the underlying case"). In the underlying case, The Siding Company alleged that Beachwood Hair Clinic, Inc. ("Beachwood"), violated the TCPA, by sending unsolicited fax advertisements without the recipient's prior express invitation or permission. The Siding Company, Beachwood, and Beachwood's liability insurer, Acuity, entered into a settlement agreement subject to the court's approval.

**{¶4}** In its final approval of settlement and judgment, the district court found that Beachwood "was solicited by a fax broadcaster that represented that its fax advertising

was with the permission of the recipient" and that "[a] total of 37,219 unsolicited advertisements were successfully faxed on [Beachwood's] behalf on at least nine occasions[.]" The court certified a class and approved the terms of the settlement. In relevant part, the court entered judgment against Beachwood in the total amount of $3,956,650, ordered that Acuity create an initial settlement fund of $1,956,650 in partial satisfaction of the judgment, and instructed that the remaining portion of the judgment was to be subject to a separate coverage action and to being satisfied only through the proceeds of Beachwood's insurance policy with Acuity.

### Federal Declaratory Judgment Action

{¶5} As contemplated by the settlement agreement, The Siding Company filed a declaratory judgment action against Acuity in the United States District Court for the Northern District of Ohio, Case No. 1:12-CV-01574, to determine whether it was entitled to recover an additional $2 million to satisfy the balance of the underlying judgment.[1] Ultimately, the district court's decision was vacated by the Sixth Circuit Court of Appeals in *Siding & Insulation Co. v. Acuity Mut. Ins. Co.*, 754 F.3d 367 (6th Cir.2014), wherein the court found federal jurisdiction was lacking and that the individual plaintiffs could not aggregate their claims to satisfy the amount-in-controversy requirement for diversity

---

[1] The district court found the unsolicited faxes were property damage, but the property damage was not caused by an "occurrence" and was expected or intended by the insured. *Siding & Insulation Co. v. Acuity Ins. Co.*, N.D.Ohio No. 1:12-CV-01574, 2013 U.S. Dist. LEXIS 89760 (June 26, 2013), *vacated and remanded,* 754 F.3d 367 (6th Cir.2014).

jurisdiction. Thereafter, this action was filed in the Cuyahoga County Court of Common Pleas.

## State Declaratory Judgment Action

{¶6} On July 8, 2014, Acuity filed a complaint for declaratory judgment in the common pleas court. The Siding Company filed an answer and counterclaim for declaratory relief. Upon agreement of the parties, the trial court ordered the parties to file joint stipulations and motions for summary judgment. Following these filings, the trial court granted Acuity's motion for summary judgment and denied The Siding Company's motion for summary judgment. The court declared as follows:

> The court declares that [Acuity] has already paid the balance of its $2 million "general aggregate limit (other than products-completed operations)" of liability coverage in satisfaction of the [The Siding Company's] claims against plaintiff's insured in the Beachwood Hair Clinic case. In addition, this court declares that [the Acuity] policy does not provide any additional liability coverage including, without limitation, coverage subject to the "products-completed operations aggregate limit."

## Standard of Review

{¶7} The Siding Company has appealed the ruling of the common pleas court. The Siding Company claims the trial court erred by denying its motion and granting Acuity's motion for summary judgment.

{¶8} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Summary judgment is appropriate when "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3)

viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party." *Marusa v. Erie Ins. Co.*, 136 Ohio St.3d 118, 2013-Ohio-1957, 991 N.E.2d 232, ¶ 7. We also review de novo a trial court's determinations regarding questions of law in a declaratory judgment action. *Assn. of Cleveland Firefighters v. Cleveland*, 2013-Ohio-5439, 5 N.E.3d 676, ¶ 6 (8th Dist.).

{¶9} The interpretation of an insurance policy is a matter of law that we review de novo. *Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St.3d 234, 2015-Ohio-3308, 41 N.E.3d 1224, ¶ 8; *Sarrough v. Budzar*, 2015-Ohio-3674, 38 N.E.3d 921, ¶ 19 (8th Dist.). The words and phrases in an insurance policy must be given their plain and ordinary meaning, unless manifest absurdity results or some other meaning is clearly evinced from the contract. *Laboy* at ¶ 20. Where an insurance policy is clear and unambiguous, the court should not go beyond the plain language of the policy to determine the rights and obligations of the parties. *Reese v. Fid. & Guar. Ins. Underwriter*, 158 Ohio App.3d 696, 2004-Ohio-5382, 821 N.E.2d 1052, ¶ 5 (8th Dist.).

## The Acuity Policy

{¶10} As relevant to this action, the Acuity policy offers coverage for "personal and advertising injury" and "property damage." There is no dispute that the "personal and advertising injury" provisions are applicable to the underlying action, and that Acuity paid $1,956,650 in partial satisfaction of the judgment.[2]

---

[2] Both parties cite *Motorists Mut. Ins. Co. v. Dandy-Jim, Inc.*, 182 Ohio App.3d 311,

**{¶11}** The parties dispute whether the "property damage" provisions apply to the underlying claims. The business liability coverage of the Acuity policy states in relevant part:

1. Business Liability

b. This insurance applies:

(1) To * * * *property damage* only if:

(a) The * * * *property damage* is caused by an *occurrence* * * *[.]

(Emphasis sic.)

**{¶12}** "Occurrence" and "property damage" are defined under the policy as follows:

13. "*Occurrence*" means an accident, including continuous or repeated exposure to substantially the same harmful conditions.

17. "*Property damage*" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. * * * ; or

b. Loss of use of tangible property that is not physically injured. * * *.

(Emphasis sic.)

**{¶13}** The term "accident" is not defined under the policy. The plain and ordinary meaning of "accident" is "an unexpected and undesirable event[.]" *Sarrough*, 2015-Ohio-3674, 38 N.E.3d 921, at ¶ 24.

---

2009-Ohio-2270, 912 N.E.2d 659 (8th Dist.), wherein the court found that claims alleging a violation of the TCPA due to the insured's transmission of unsolicited fax advertisements were included under the policy's "advertising injury" coverage and the insurer had an obligation to defend its insured.

**{¶14}** The Acuity policy has the following exclusion for expected or intended injury from its business liability coverage:

This insurance does not apply to:

a. Expected or Intended Injury

* * * [P]*roperty damage* expected or intended from the standpoint of the insured. * * *

(Emphasis sic.)

**{¶15}** The business liability coverage provided under the Acuity policy has a "Products-Completed Operations Aggregate Limit" of $2 million, and a "General Aggregate Limit (Other Than Products-Completed Operations)" of $2 million. With respect to these aggregate limits, the policy provides as follows:

a. The Products-Completed Operations Aggregate Limit shown in the Declarations is the most we will pay for injury or damage under the *products-completed operations hazard* arising from all *occurrences* during the policy period.

b. The General Aggregate Limit shown in the declarations is the most we will pay for the sum of all damages because of all:

(1) *Bodily injury, property damage* and medical expenses arising from all *occurrences* during the policy year. This limit applies separately to:

(a) Each location owned by or rented to you. * * *; and

(b) Each of your projects away from a location owned by or rented to you; or

(2) *Personal* and *advertising injury* arising out of all offenses committed during the policy period.

(Emphasis sic.)

**{¶16}** A "products-completed operations hazard" is defined under the policy as follows:

16.  "*Products-completed operations hazard*":

(a)  Includes all *bodily injury* and *property damage* occurring away from premises you own or rent and arising out of *your product or your work* [subject to the exceptions provided].

(Emphasis sic.)

### Arguments and Analysis

**{¶17}** The Siding Company argues that the underlying claims are covered by both the "personal and advertising injury" provision and the "property damage" provisions. Its position is that the underlying claims involved "property damage" and injury sufficiently accidental to be an "occurrence" not excluded as an "expected or intended injury."  As such, The Siding Company claims that it should be entitled to recover an additional $2 million under the Acuity policy.  It claims that the "property damage" is within the policy's "products-completed operations hazard" and that the policy offers a $2 million limit for "products-completed operation hazard" claims separate and apart from the general aggregate limit.  The Siding Company also claims that the general aggregate limit (nonproduct completed operations) applies separately to (1) advertising injury and property damage claims; and (2) to property damage claims arising from separate projects.

**{¶18}** The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement,"

unless certain statutory exceptions apply. 47 U.S.C. 227(b)(1)(C). The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. 227(a)(5). The TCPA provides for a private right of action "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. 227(b)(3)(B).

{¶19} The underlying claims allegedly caused property damage as defined under the Acuity policy. The class-action complaint alleged that the recipients of the unsolicited faxes were damaged by loss of use of paper, toner, and the fax machine, and wear and tear on the fax machine. It has been recognized that the recipient of an unsolicited fax suffers property damage or a cognizable injury in the form of depletion of the recipient's consumables and loss of use of the fax machine. *E.g., Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir.2015); *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, E.D.Pa. No. 12-7228, 2015 U.S. Dist. LEXIS 43085 (Mar. 31, 2015); *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 638 (4th Cir.2005); *Am. States Ins. Co. v. Capital Assocs. of Jackson Cty., Inc.*, 392 F.3d 939, 943 (7th Cir.2004).

{¶20} The point of dispute is whether the alleged property damage was caused by "an occurrence" that is not barred by the policy's "intentional acts" exclusion. No Ohio

court has addressed whether an insurance policy's property-damage coverage applies to unsolicited fax claims. However, a number of federal courts have considered the issue.

{¶21} The majority of federal courts have found that property-damage coverage does not exist because the insured should have expected or intended that its conduct would cause property damage, i.e., the loss of use of the fax machine and the depletion of the fax recipients' paper and toner as a result of receiving unsolicited faxes from the insured. *St. Paul Fire & Marine Ins. Co. v. Brother Internatl. Corp.*, 319 Fed.Appx. 121, 127 (3d Cir.2009); *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F.Supp.2d 488, 510 (E.D.Pa.2006); *Res. Bankshares Corp.*, 407 F.3d at 638; *W. Rim Invest. Advisors, Inc. v. Gulf Ins. Co.*, 269 F.Supp.2d 836, 845 (N.D.Tex. 2003), *aff'd,* 96 Fed. Appx. 960 (5th Cir.2004) (affirmed "for essentially the same reasons stated by the district court"); *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 551 (7th Cir.2009). The act of sending the unsolicited fax does not qualify as an "occurrence" and is precluded by the intentional acts exclusion because "'[w]hile appellants might not have intended to violate the TCPA, they did intend to send the faxes and knew that sending them would use the recipients' paper, toner and time.'" *Stevens & Ricci, Inc.* at *17-18, quoting *Nationwide Mut. Ins. Co. v. David Randall Assoc.*, 551 Fed.Appx. 638, 641 (3d Cir.2014). Some of these cases involved the use of a third party to send the fax advertisements. *See David Randall Assoc.*; *Stevens & Ricci, Inc.*; *Melrose Hotel Co*. Indeed, while "[s]enders may be uncertain whether particular faxes violate [the TCPA][,] all senders know exactly how faxes deplete recipients' consumables. * * * Because every

junk fax invades the recipient's property interest in consumables, this normal outcome is not covered." *Am. States Ins. Co.*, 392 F.3d at 943.

**{¶22}** Nevertheless, The Siding Company argues that there was no intent to cause harm in this case because Beachwood believed the faxes were sent with consent. The Siding Company maintains that the underlying claims are based on the wrongful conduct of a third-party fax broadcaster who represented that its fax advertising was with the permission of the recipient.[3] The Siding Company cites *Park Univ. Ents. v. Am. Cas. Co.*, 442 F.3d 1239 (10th Cir.2006), wherein the court found an intent to injure the recipient could not be inferred and an "occurrence" was possible under the insurance contract when there was evidence to support the plaintiff's belief that it was transmitting a fax to a recipient who wished to receive it.[4] The Siding Company also cites *Erie Ins. Exchange v. Lake City Indus. Prods.*, Mich. App. No. 302889, 2012 Mich. App. LEXIS 973 (May 17, 2012), wherein the court recognized that "in engaging a third party to fax advertisements, it is possible that Lake City did not intend or expect its advertisements to be sent to unwilling recipients[.]" We are not inclined to agree with appellant's position.

---

[3] We note that there is no evidence in this case to demonstrate that the fax recipients had taken any action that would support a reasonable belief of prior express permission.

[4] In the *Park Univ.* case, Park University claimed that the fax advertisement was not unsolicited because it had an existing business relationship with the recipient, or it had prior express invitation or permission to send the fax advertisement. *Id.* at 1242. Park University contended that an employee of the recipient had supplied a fax number to Park University while attending one of its seminars in the scope of her employment. *Id.* at 1242-1243.

**{¶23}** Under Ohio law, an intent to cause harm will be inferred when "the insured's intentional act and the harm caused are intrinsically tied so that the act has necessarily resulted in the harm." *Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090, ¶ 48. Beachwood engaged a third party to send the faxes. There is no dispute that sending fax advertisements results in the loss of use of the recipients' fax machine, toner, paper, and ink. This conduct was clearly intentional, and the consequences thereof were natural and expected. We agree with Acuity's argument that "'property damage' is 'inherent' in the very nature of sending a junk fax."

**{¶24}** For these reasons, we find that the property damage was not caused by an "occurrence"; it was expected or intended by the insured, and the exclusion clause applies to preclude coverage under the property-damage provisions of the insurance agreement. We further find that the property damage does not fall within the policy's "products-completed operations hazard" provision, and that the policy does not afford any other limits of insurance to the underlying claims.

**{¶25}** Upon review, we find the trial court properly granted Acuity's motion for summary judgment and denied The Siding Company's motion. Appellant's assignments of error are overruled.

**{¶26}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR